No. 42,416

PERRY A. MAY, *Appellant*, v. SANTA FE TRAIL TRANSPORTATION COM-
PANY, a corporation, CLARENCE OFFENSTEIN, WILLIAM D. BRAY
and FRANK W. JESTER, *Appellees*.

(370 P. 2d 390)

Opinion filed April 7, 1962.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action against the Santa Fe Trail Trans-
portation Company and three of its officials for an alleged unlawful

discharge of the plaintiff from employment. Appeal has been perfected from an order of the trial court sustaining a demurrer to the second amended petition as amended (hereafter referred to as the petition).

The question is whether the petition states a cause of action on the ground that the defendants (appellees) unlawfully conspired to cause the discharge of the plaintiff (appellant) from employment.

The petition is framed in two counts wherein damages in the total sum of $98,640 are sought. In the first count the appellant seeks actual damages and in the second count punitive damages.

Insofar as material herein the petition alleges that the appellant was employed by the Santa Fe since the year 1931 as a welder in the body shop under an *oral* contract of employment, and "that there was no agreement except as to wages and hours of work, which was from 8:00 a. m. to 5:00 p. m., each working day." On August 6, 1959, he was not feeling well and at noon notified the appellee, William D. Bray, foreman of the body shop, that he was ill and unable to work in the afternoon. After notifying Mr. Bray he "clocked out." Thereupon, the appellant returned home and rested the remainder of the day, and on the following day when his condition had not improved his wife advised the appellee, Frank W. Jester, shop superintendent and agent of the Santa Fe, by telephone that the appellant was not well and was unable to return to work that day because he was going to the doctor. On that day, August 7, 1959, the appellant was treated by a chiropractor, and on the following day he was treated by a medical doctor.

The petition then specifically alleged:

"That on the following Monday, August 10, 1959, when his condition had improved sufficiently, the plaintiff returned to work, and was preparing to 'clock in' when he was advised by the aforementioned defendants Bray and Jester that he had voluntarily quit and was no longer considered by the company as an employee of the defendant company. That the plaintiff insisted and advised the agents and employees of the defendant company, the above mentioned defendants Bray and Jester, that he had not voluntarily quit; but all to no avail. That the defendant Jester joined with the defendant Clarence Offenstein, who was the general manager of the Eastern Division of the defendant company, in declaring that the plaintiff had voluntarily terminated, when in truth and fact he had not done so.

". . . That the agents of the defendant company knew or should have known that the plaintiff had not voluntarily quit or terminated his employment. That the defendant company, acting by and through its agents, as above al-

leged, knowingly and deliberately acted to the detriment and damage of this plaintiff in refusing him admittance to the premises and employment as above alleged and in reporting to their company superiors that the plaintiff had voluntarily terminated his employment with the defendant company.

"That this plaintiff had provoked the ire of his superiors above named herein, by making complaints about bad working conditions, and the defendant company acting by and through the co-defendants herein desiring to discharge the plaintiff, and by fraud and subterfuge as alleged herein, deliberately, wrongfully and without just cause declared that the plaintiff had voluntarily terminated, when in truth and in fact he had not done so.

"That the defendants, Clarence Offenstein, William D. Bray and Frank W. Jester, as agents, servants and employees of the defendant company, acted jointly and concurrently in all the acts of commission and omission as alleged herein."

Further allegations set forth the appellant's tenure of office, seniority rights, life expectancy and average weekly earnings.

The second count incorporated the allegations of the first and alleged that the appellees "acted jointly and concurrently in a conspiracy which amounted in law and in fact to intentional and deliberate fraud and subterfuge, for the specific purpose of harming this plaintiff in his contract of employment with the defendant company, subjecting the defendants to liability for punitive damages."

The appellant concedes that unless a cause of action is stated in Count I for actual damages no cause of action is stated in Count II which would entitle him to recover punitive damages. (*Stoner v. Wilson,* 140 Kan. 383, 394, 36 P. 2d 999; *Estell v. New Amsterdam Gas Co.,* 164 Kan. 712, 192 P. 2d 194; *Branstetter v. Robbins,* 178 Kan. 8, 14, 283 P. 2d 455; and *Local Union No. 795 v. Kansans for the Right to Work,* 189 Kan. 115, 368 P. 2d 308.)

The appellant's brief is confined to two pages in which he quotes authorities defining "conspiracy" and the meaning of the word "unlawful." He cites *Rogers v. J. R. Oil and Drilling Co.,* 149 Kan. 807, 89 P. 2d 847, for the essentials necessary to plead conspiracy, and *Rickel v. Cooperative Exchange,* 113 Kan. 592, 600, 215 Pac. 1015, and *Hutson v. Imperial Royalties Co.,* 135 Kan. 718, 13 P. 2d 298, for the proposition that a conspiracy may be established by circumstantial evidence. (See, also, *State v. Borserine,* 184 Kan. 405, 337 P. 2d 697.)

The contract of employment alleged by the appellant in his petition was an oral contract of employment, indefinite as to time, and terminable at the will of either party.

The appellant's initial petition was squarely based upon a contract between the Santa Fe Trail Transportation Company and the National Association of Machinists of which the appellant alleged he was a member, and that he was being deprived of his rights under this union contract. The union contract was attached and made a part of the petition by incorporation. It exhaustively covered all matters relating to conditions of employment, including such items as rates of pay, hours of service, seniority, hospitalization, vacations and working conditions. It also had an article dealing with "grievances and arbitration."

The trial court sustained a demurrer to this initial petition of the appellant and granted him time to file an amended petition. The second amended petition as amended, which is presently before the court, eliminates all reference to a "union contract" or to the appellant's membership in the union. He merely alleges that his contract of employment was oral, and that there was no agreement except as to wages and hours of work, which were from 8:00 a. m., to 5:00 p. m., each working day.

Here on demurrer we are confined to the facts of the petition presently before the court. It merely alleges an oral contract of employment, and makes no reference to a union contract or union membership.

In the absence of a contract, express or implied, between an employee and his employer covering the duration of such employment, no action for discharging the employee from service can be maintained against the employer. (*Swart v. Huston*, 154 Kan. 182, 117 P. 2d 576, Syl. ¶ 4.)

Decisions of the Tenth Circuit Court of Appeals and of the Federal District Court of Kansas are in harmony with the rule in the *Swart* case. (*Mitchell v. Stanolind Pipe Line Co.*, [U. S. C. A. 10th], 184 F. 2d 837; *Boatright v. Steinite Radio Corp.*, [C. C. A. 10th], 46 F. 2d 385; and *Kunz v. Colnon*, [D. C. Kan.], 54 F. Supp. 673.)

In *Mitchell v. Stanolind Pipe Line Co.*, supra, the court held:

". . . It is not the function of the courts in the absence of a contract to compel a person to accept or retain another in his employ, nor is it the function of the courts to compel any person against his will to remain in the employ of another. *Coppage v. State of Kansas*, 236 U. S. 1, 35 S. Ct. 240, 59 L. Ed. 441; *Adair v. United States*, 208 U. S. 161, 174, 28 S. Ct. 277, 52 L. Ed. 436. This leaves only the question of whether defendant owed plaintiff any legal duty to retain him in its employ. No claim is made that the discharge

was in violation of any right given the plaintiff by the National Labor Relations Act, 29 U. S. C. A. § 151 *et seq.*, or by any state law. No question of public health, safety or welfare is involved so we have no difficulty in determining that the complaint did not state a cause of action. In the absence of a contract or statutory provision an employer may discharge an employee without cause or reason and owes no duty to continue the employment of an employee. 35 Am. Jur., Master and Servant, Sec. 34." (p. 838.)

For other authorities of like effect see, *Coxon v. Southern Pac. Co.,* [C. C. A. 9th], 155 F. 2d 455; *Elder v. New York Cent. R. Co.,* [C. C. A. 6th], 152 F. 2d 361; and 31 Am. Jur., Labor, § 8, p. 390.)

The rule concerning seniority right of an employee was stated in *Elder v. New York Cent. R. Co.,* supra, as follows:

"The seniority right of the man who toils, indoors or out, in a shop or in an office, is a most valuable economic security, of which he may not be unlawfully deprived. The right, however, is not inherent. It must stem either from a statute or a lawful administrative regulation made pursuant thereto, or from a contract between employer and employee, or from a collective bargaining agreement between employees and their employer. In the absence of statute, mere employment independent of the contractual conferring of special benefits upon those who have longest service records with the individual employer, creates no rights of seniority in retention in service or in reemployment. . . ." (p. 364.)

In the instant case the appellant asserts no statute or administrative regulation made pursuant thereto, or contract, or collective bargaining agreement conferring special benefits upon him by reason of long service or seniority rights.

Where the plaintiff has alleged an oral contract of employment that is terminable at the will of either party, he has alleged no cause of action for breach of contract by alleging that he has been discharged. Merely adding the words and phrases, "conspiracy," "deliberate fraud and subterfuge," "deliberately, wrongfully and without just cause," and "unlawfully and wrongfully," to an action for alleged breach of contract of employment does not transform the action into one based upon conspiracy. (*McGill v. Kuhn,* 186 Kan. 99, 348 P. 2d 811; *Sullivan v. Paramount Film Distributing Co.,* 164 Kan. 125, 187 P. 2d 360; and *Rogers v. J. R. Oil and Drilling Co.,* supra.)

This court said in *Browning v. Blair,* 169 Kan. 139, 218 P. 2d 233:

"Does the amended petition state facts sufficient to constitute actionable fraud or conspiracy? The words fraud and conspiracy alone, no matter how often repeated in a pleading, cannot make a case for the interference of a court of equity until connected with some specific act for which one person is in law responsible to another; they have no more effect than other words of unpleasant

signification. . . . Before there can be a civil action for conspiracy, the pleader must plead facts which establish the elements required as a matter of law. And by a complete failure to plead any unlawful act or acts, this amended petition must fall as to the conspiracy. . . ." (p. 147.)

No specific acts are alleged in the petition for which the appellees are in law responsible to the appellant. It is readily apparent that a joint liability for conspiracy cannot be pleaded as to the corporate defendant on the one hand and the individual defendants on the other. If the corporate defendant is liable at all, it has to be liable for a breach of contract.

There is no way that the corporate defendant can be guilty of inducing itself, or "conspiring" with itself to take a course of action that it may lawfully take concerning its own contract. (*Allison v. American Airlines,* [U. S. D. C., N. D. Okla.], 112 F. Supp. 37.) The only question remaining is whether the individual defendants were without privilege to take the actions alleged.

The petition specifically named the individual defendants, indicating the respective positions held by these individuals with the defendant company. There is no allegation that the individual defendants acted in any capacity other than their official corporate capacity on behalf of the defendant corporation. There is no suggestion that the individual defendants were acting in their individual capacities, or for their individual advantage. There is no allegation that the individual defendants acted outside the scope of their authority. The petition must therefore be construed to allege that the individual defendants acted in their official capacity and pursuant to their confidential relationship with the defendant corporation.

Where, as here, the individual defendants are named and described as officials of the corporate defendant in the petition, with no allegations that these defendants acted other than in their official capacities on behalf of the corporate defendant, and no allegation remotely indicates that they were pursuing their course as individuals or for individual advantage, the acts of the individual defendants must be regarded as the acts of the corporation, and when so acting they cannot conspire with the corporation of which they are a part. (*Bliss v. Southern Pacific Co. et al,* [1958], 212 Or. 634, 321 P. 2d 324.)

While it is true that an action will lie for unjustifiably inducing a breach of contract by a party thereto, the inducement must be

wrongful and not privileged. Under circumstances similar to those alleged herein, even a breach of contract induced by one who is in a confidential relationship with a party to the contract is privileged. Thus, a servant may induce his master to breach a contract with a third person. (*Lawless v. Brotherhood of Painters*, [1956], 143 C. A. 2d 474, 300 P. 2d 159.) For other cases to the effect that a corporate official, acting for and on behalf of his corporation, or a servant acting for and on behalf of his master, is privileged to induce a breach of contract see *Allison v. American Airlines*, supra; *Baruch v. Beech Aircraft Corporation*, [U. S. C. A. 10th], 175 F. 2d 1; 26 A. L. R. 2d 1270; 30 Am. Jur., Interference, § 37, p. 82; and 3 Fletcher Cyclopedia Corporations [1947 Rev. Ed.], § 1001, p. 501.

*A fortiori*, the officers and agents of a corporation, acting for and on behalf of their corporation, would not be liable for inducing action by the corporation which it could lawfully undertake to do under a contract of employment. Under such circumstances the conduct of the officers and agents of the corporation is privileged.

Inasmuch as the petition has alleged no unlawful act of the corporate defendant terminating the appellant's employment with the corporation, and the conduct of the officials of the corporation was privileged, the trial court did not err in sustaining the demurrer to the appellant's petition.

The judgment is affirmed.