(901 P.2d 529)
No. 72,246

LEE E. CLEVENGER, *Appellant*, v. CATHOLIC SOCIAL SERVICE OF THE ARCHDIOCESE OF KANSAS CITY IN KANSAS, INC.; LOUIS FINOCCHARIO; DIANE ROBOLEWICZ; and CAROL OBRADOVITS, *Appellees*.

Opinion filed August 25, 1995.

*Nancy A. Roe,* of Kansas City, for the appellant.

*Anthony F. Rupp,* of Shughart Thomson & Kilroy, P.C., of Overland Park, for appellee Carol Obradovits.

*Deryl W. Wynn,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellees Catholic Social Service of the Archdiocese of Kansas City in Kansas, Inc., Louis Finocchario, and Diane Robolewicz.

Before BRAZIL, C.J., LEWIS, J., and JACK L. BURR, District Judge, assigned.

LEWIS, J.: Plaintiff Lee Clevenger filed this action against the defendants for tortious interference with contract, intentional infliction of emotional distress, and malicious prosecution. The trial court granted pretrial summary judgment in favor of defendants on all claims. Plaintiff sought to amend his petition to include claims of negligent hiring and/or retention; permission to do so was denied. Plaintiff appeals from various rulings of the trial court.

## FACTS

Plaintiff worked under a contract with Catholic Social Service of the Archdiocese of Kansas City in Kansas, Inc., (CSS) as a therapeutic foster parent. Defendant Louis Finocchario is a licensed social worker and the executive director of CSS. Defendants Diane Robolewicz and Carol Obradovits are both licensed social workers and employees of CSS.

Plaintiff entered into an agreement with CSS in which he was to act as a therapeutic foster parent. Apparently, plaintiff was advised by CSS that the young people who were to be placed in his home might be somewhat emotionally unstable. Plaintiff contends he was warned by CSS employees that some of the children placed with him would be prone to making false allegations of sexual abuse.

In any event, plaintiff was established as a therapeutic foster parent. A child, J.H., was placed in plaintiff's home for a short

period of time and was moved from the home at the request of plaintiff. C.B. was then placed in plaintiff's home and remained there for three and a half months. C.B. was removed from plaintiff's home by CSS.

Shortly prior to the removal of C.B. from plaintiff's home, Robolewicz was advised by the therapist for J.H. that J.H. was alleging plaintiff had sexually abused him. This claim of sexual abuse made by J.H. was reported to SRS either by or on the instruction of Robolewicz and was also investigated by SRS and Robolewicz.

After C.B. was removed from plaintiff's home, CSS discontinued placing foster children with plaintiff.

Robolewicz participated in the investigation of sexual abuse by plaintiff conducted by SRS in Kansas and by the Jackson County Sheriff's Department in Missouri. As a result of this investigation, SRS issued a proposed finding that J.H. had been sexually abused. This finding was appealed by plaintiff and, on appeal, an SRS hearing officer advised plaintiff: "Based on the statements of yourself and the children, police reports, and documentation of investigative staff, it appears to be more likely than not that both [C.B.] and [J.H.] were sexually abused. You have been identified as the perpetrator."

Despite this finding by SRS, plaintiff was never prosecuted for the sexual abuse of J.H. or C.B.

As indicated, CSS discontinued the use of plaintiff as a therapeutic foster parent. In due time, plaintiff filed a five-count petition against defendants, which the trial court disposed of as follows: (1) On Counts I and II, the trial court granted summary judgment in favor of defendants on the allegations of intentional infliction of emotional distress. (2) Count III was for malicious prosecution, and it was held to be time barred. This decision has not been appealed by plaintiff. (3) Count IV, alleging tortious interference with contract against Finocchario, Robolewicz, and Obradovits, was dismissed on the theory that each individual defendant was an officer or agent of CSS and acted within the scope of their employment. (4) Count V was a claim against defendants for wrongful discharge. On this count, the trial court granted summary judg-

ment to defendants on the ground that plaintiff was not an employee of CSS.

Other facts will be developed as necessary in the discussion of the issues on appeal.

### AMENDMENT OF PETITION

Approximately 15 months after he had filed suit and less than 1 month prior to the date set for trial, plaintiff filed a motion to amend his petition. Plaintiff sought to add claims that CSS was liable to him for the negligence of Robolewicz on the basis of respondeat superior and further that CSS was liable for the negligent hiring and retention of Robolewicz. The trial court refused to grant plaintiff leave to amend his petition. Plaintiff claims on appeal that the trial court abused its discretion in this regard.

K.S.A. 60-215(a) provides in part:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. *Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.*" (Emphasis added.)

In regard to the proper construction of that statute, we have said: "A trial court is given broad discretionary power under K.S.A. 60-215 to permit or deny the amendment of pleadings, and its actions will not constitute reversible error unless it affirmatively appears that the amendment allowed or denied is so material it affects the substantial rights of the adverse party." *Rowland v. Val-Agri, Inc.*, 13 Kan. App. 2d 149, Syl. ¶ 1, 766 P.2d 819 (1988).

Plaintiff argues he was not aware of the negligence of Robolewicz until after Robolewicz had been deposed, some three weeks prior to his filing of the motion to amend. The trial court held that plaintiff should have been aware of all relevant facts prior to the taking of the deposition of Robolewicz and that the motion to amend the petition was not timely.

We hold the trial court did not err in denying plaintiff's motion to amend. The record in this case indicates that CSS, in its response

to interrogatories, stated that it did not conduct an investigation of its own prior to advising SRS of the claims of sexual abuse. It was the failure of CSS to conduct this investigation that forms the basis of plaintiff's motion for leave to amend his petition. This information was available to the plaintiff several months prior to the taking of the deposition of Robolewicz. As a result, we agree with the trial court that plaintiff's motion to amend, filed less than a month prior to trial, was not timely. The trial court did not abuse its discretion in denying plaintiff's motion for leave to amend his petition.

## TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff alleged that Finocchario, Robolewicz, and Obradovits, all corporate officers and employees of CSS, tortiously interfered with his contractual relationship with CSS. The trial court dismissed this claim on the ground that defendants were all corporate officers and employees of CSS, acting within the scope of their employment. This is a correct statement of the law of Kansas, and we affirm the decision of the trial court.

The question presented is whether Kansas recognizes an action for tortious interference with contract against an agent or employee of one of the contracting parties.

One of the keys to resolving this issue is the doctrine of termination at will. "In the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged." *May v. Santa Fe Trail Transportation Co.*, 189 Kan. 419, Syl. ¶ 1, 370 P.2d 390 (1962); see *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, Syl. ¶ 2, 872 P.2d 252 (1994). If plaintiff in this case *was* an employee of CSS, there is no indication that he was anything other than an employee-at-will. As such, CSS was free to terminate its relationship with plaintiff at any time for virtually any reason. The individual defendants in this case were all officers or employees of CSS. Since CSS cannot be held liable for its termination of

plaintiff's contract of employment, neither can its agents or employees.

Our Supreme Court dealt with a similar factual situation in *May v. Santa Fe Trail Transportation Co.* In that case, the plaintiff sued the corporation and three of its employees for unlawful discharge of plaintiff from employment. The trial court held that plaintiff's petition did not state a cause of action against the defendants, and this holding was affirmed by our Supreme Court, which said:

"No specific acts are alleged in the petition for which the appellees are in law responsible to the appellant. It is readily apparent that a joint liability for conspiracy cannot be pleaded as to the corporate defendant on the one hand and the individual defendants on the other. If the corporate defendant is liable at all, it has to be liable for a breach of contract.

"There is no way that the corporate defendant can be guilty of inducing itself, or 'conspiring' with itself to take a course of action that it may lawfully take concerning its own contract. [Citation omitted.] The only question remaining is whether the individual defendants were without privilege to take the actions alleged.

"The petition specifically named the individual defendants, indicating the respective positions held by these individuals with the defendant company. There is no allegation that the individual defendants acted in any capacity other than their official corporate capacity on behalf of the defendant corporation. There is no suggestion that the individual defendants were acting in their individual capacities, or for their individual advantage. There is no allegation that the individual defendants acted outside the scope of their authority. The petition must therefore be construed to allege that the individual defendants acted in their official capacity and pursuant to their confidential relationship with the defendant corporation.

"Where, as here, the individual defendants are named and described as officials of the corporate defendant in the petition, with no allegations that these defendants acted other than in their official capacities on behalf of the corporate defendant, and no allegation remotely indicates that they were pursuing their course as individuals or for individual advantage, the acts of the individual defendants must be regarded as the acts of the corporation, and when so acting they cannot conspire with the corporation of which they are a part. [Citation omitted.]

"While it is true that an action will lie for unjustifiably inducing a breach of contract by a party thereto, the inducement must be wrongful and not privileged. *Under circumstances similar to those alleged herein, even a breach of contract induced by one who is in a confidential relationship with a party to the contract is privileged. Thus, a servant may induce his master to breach a contract with a third person.* [Citation omitted.] . . . .

"*A fortiori*, the officers and agents of a corporation, acting for and on behalf of their corporation, would not be liable for inducing action by the corporation which

it could lawfully undertake to do under a contract of employment. Under such circumstances the conduct of the officers and agents of the corporation is privileged.

"Inasmuch as the petition has alleged no unlawful act of the corporate defendant terminating the appellant's employment with the corporation, and the conduct of the officials of the corporation was privileged, the trial court did not err in sustaining the demurrer to the appellant's petition." (Emphasis added.) *May v. Santa Fe Trail Transportation Co.*, 189 Kan. at 424-25.

In *Stanfield v. Osborne Industries, Inc.*, 7 Kan. App. 2d 416, Syl. ¶ 9, 643 P.2d 1115, *aff'd in part, rev'd in part* 232 Kan. 197, 654 P.2d 917 (1982), this court held:

"As a general rule, the officers and agents of a corporation, when acting for and on behalf of their corporation, will not be liable for inducing action by the corporation which it could lawfully undertake under a contract. Under such circumstances, the conduct of the officers and agents of the corporation is privileged."

In this case, there is no allegation that the individual defendants were acting in any capacity other than their official capacities as officers and employees of CSS. Since CSS had the right to terminate plaintiff's contract at will, its officers and employees cannot be held liable for inducing CSS to take that action.

Plaintiff seeks to have us create an exception to the rule stated in *May* and *Stanfield*. He argues that "a person who maliciously procures the discharge of another by their common employer is not shielded from liability by his or her status as a supervisory employee." *Sorrells v. Garfinckel's, et al.*, 565 A.2d 285, 291 (D.C. 1985). Plaintiff fails, however, to cite any Kansas precedent for such an exception. There is no question but that this issue has generated a variety of approaches in other jurisdictions. See generally Annot., 72 A.L.R.4th 492.

We conclude that Kansas law recognizes no exceptions to the general rule stated in *May* and *Stanfield*. "This court is required to apply the law established by the decisions of our Supreme Court, absent some indication that the court is departing from its previously expressed position." *Zion Lutheran Church v. Kansas Comm'n on Civil Rights*, 16 Kan. App. 2d 237, 242, 821 P.2d 334 (1991), *aff'd* 251 Kan. 206, 830 P.2d 536 (1992). Further, we will not rule contrary to recent holdings of our Supreme Court " 'unless

a valid reason exists to believe the Supreme Court would reach a different result if it were to reconsider the issue.'" *Mercer v. Fritts*, 9 Kan. App. 2d 232, 235, 676 P.2d 150, *aff'd* 236 Kan. 73, 689 P.2d 774 (1984) (quoting *In re Lett & Jackson*, 7 Kan. App. 2d 329, 335, 640 P.2d 1294, *rev. denied* 231 Kan. 800 [1982]). The trial court's decision in this case was dictated by *May* and *Stanfield*. We see no reason to assume the Supreme Court would change these decisions or create any exceptions to them.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The trial court granted summary judgment to defendants on plaintiff's cause of action for intentional infliction of emotional distress.

The focus of this claim by plaintiff is basically on Robolewicz. It is plaintiff's contention that Robolewicz reported allegations of sexual abuse by plaintiff to SRS. In addition, Robolewicz is alleged to have participated in two interviews with C.B. in which allegations of sexual abuse were made. Plaintiff claims these interviews were deficient and not properly conducted. Plaintiff alleges that Robolewicz acted in this manner unethically, with malice, and with the intent to harm him. There is a dispute in the facts as to whether Robolewicz or J.H.'s therapist made the initial report of alleged sexual abuse. There is also a dispute as to whether C.B. was removed from plaintiff's care by SRS or CSS. Since we deal with this issue on appeal from summary judgment granted to defendants, we will construe both disputed facts in favor of plaintiff.

The critical question on this issue is whether the actions of defendants were privileged. The trial court held that they were and that the individual defendants were immune from liability for their actions involving alleged sexual abuse and the investigation of that abuse. We agree with this decision.

K.S.A. 38-1526 provides:

"Anyone participating *without malice* in the making of an oral or written report to a law enforcement agency or the department of social and rehabilitation services relating to injury inflicted upon a child under 18 years of age as a result of physical, mental or emotional abuse or neglect or sexual abuse *or in any follow-up activity to or investigation of the report* shall have immunity from any civil liability that might otherwise be incurred or imposed. Any such participant shall have the same

immunity with respect to participation in any judicial proceedings resulting from the report." (Emphasis added.)

K.S.A. 38-1522(a) provides: "When any of the following persons has reason to suspect that a child has been injured as a result of physical, mental or emotional abuse or neglect or sexual abuse, the person shall report the matter promptly as provided in subsection (c) or (e): . . . licensed social workers."

K.S.A. 38-1522(c) requires that reports of abuse be made to SRS or, if SRS is not open for business, to the appropriate law enforcement agency. Subsection (e) of this statute pertains only to reports of abuse at institutions operated by SRS, in which case the report is to be made to the attorney general. The willful and knowing failure to make a report required by 38-1522 is a class B misdemeanor, as is interference with the making of such a report. K.S.A. 38-1522(f) and (g).

It is apparent that the public policy of this state is to encourage persons with information concerning possible child abuse to report this information to the proper authorities. Indeed, a licensed social worker is subjected to criminal penalties for a willful and knowing failure to make the required report. Finocchario, Robolewicz, and Obradovits were all licensed social workers. Once information concerning alleged sexual abuse by plaintiff was made available to them, they risked prosecution for a class B misdemeanor by failing to report that information.

On the other hand, the public policy of this state is not to encourage false and malicious reports of sexual abuse. For that reason, persons acting with malice are not granted immunity.

We recognize the importance of the stated public policy concerning the required reporting of child sexual abuse. We consider it vital that we not create conditions which might chill the prompt reporting of incidents of abuse to the proper authorities. The quandary of the individual defendants is apparent. Had they failed to report the information that plaintiff had sexually abused children under his care, they would have been rendered liable for criminal prosecution. On the other hand, the reporting of that information has resulted in them being sued for intentional infliction of emo-

tional distress. The resolution of this issue requires that we balance the competing factors.

We have no hesitation in holding that the individual defendants in this action are immune from liability for their participation in the investigation and reporting of alleged sexual abuse by plaintiff, provided that they acted without malice in the reporting and investigation of those incidents.

The trial court found that defendants acted without malice. This finding presents some difficulties because it was made on a motion for summary judgment. In general, whether an individual acted with or without malice involves determining his or her state of mind. "A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. *Gleichenhaus v. Carlyle*, 226 Kan. 167, 597 P.2d 611 (1979); *Bowen v. Westerhaus*, 224 Kan. 42, 578 P.2d 1102 (1978)." *Hein v. Lacy*, 228 Kan. 249, 256, 616 P.2d 277 (1980). "It has been recognized that summary judgment should be employed with caution in defamation cases. However, summary judgment may properly be granted in a defamation case when the evidence shows no liability as a matter of law and where the essential facts are not in dispute." 228 Kan. at 256.

This is a case alleging the intentional infliction of emotional distress. We conclude that it is similar to a defamation action and that the rules stated in *Hein v. Lacy* are applicable to the instant matter. The record in this case indicates that plaintiff has alleged defendants acted maliciously. On the other hand, there is not one bit of hard evidence to suggest any reason why Robolewicz or any of the other individual defendants would have had cause or reason to act maliciously. It seems to us that in a case of this nature, there must be some direct evidence of malice or at the very least some indication that a defendant in reporting an allegation of sexual abuse had some reason to act maliciously as to plaintiff. For instance, in *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024 (1991), relied upon by plaintiff, the evidence indicated that defendant had assaulted, battered, and falsely imprisoned plaintiff, among other wrongful acts. These facts, along with others, were direct evidence of malice and

were sufficient to take plaintiff's action for intentional infliction of emotional distress to the jury. Such evidence does not exist in this case.

We conclude that a record which requires an inference of malice merely from the fact that the information was reported or investigated or from negligence in the reporting and investigation of the information is not sufficient to withstand a motion for summary judgment. The public policy of encouraging reports of sexual abuse, as indicated by enactments of the legislature of this state, requires proof of direct evidence of malice or at least facts which would indicate valid reasons to infer malicious actions of defendants.

We hold the trial court did not err in concluding on summary judgment that there was no evidence of malice as a matter of law. Considering the strong public policy in favor of encouraging reports of possible sexual abuse and the quandary these defendants were placed in under the laws of this state, the absence of any direct evidence of or reason for malicious actions by defendants did not create a material issue of fact over the existence of malice. The trial court did not err in granting summary judgment on plaintiff's claim of intentional infliction of emotional distress. The record in this case contains no direct evidence of malice and gives us no basis for inferring the existence of malice on the part of any of the defendants. Indeed, as near as we can tell from the record, defendants were acting in a manner required by law.

## WRONGFUL DISCHARGE

The trial court dismissed plaintiff's count against defendants for wrongful discharge by concluding that plaintiff was not an employee of CSS.

We have reviewed the record in this regard and conclude that the evidence is conflicting on the question of whether plaintiff was, in fact, an employee of CSS.

However, CSS argues on appeal that even assuming plaintiff was an employee, the trial court's action in dismissing the claim for wrongful discharge is supported by the fact that plaintiff was, at best, an employee-at-will.

It is the law of Kansas that, "in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged." *Morriss v. Coleman Co.*, 241 Kan. 501, 510, 738 P.2d 841 (1987).

There is nothing in this record to indicate the duration of plaintiff's employment contract with CSS. As such, under the laws of this state, his contract was terminable at will, and he has no cause of action for wrongful discharge. We affirm the trial court for arriving at the correct result even though it was right for the wrong reason. See *In re Estate of Murdock*, 20 Kan. App. 2d 170, Syl. ¶ 3, 884 P.2d 749 (1994).

Plaintiff's cause of action for wrongful discharge fails on the basis of the following language in Syl. ¶ 1 of *May v. Santa Fe Trail Transportation Company*: "In the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged."

Affirmed.