(196 P.3d 411)
No. 98,810

DANIEL K. DIEDERICH, *Appellant,* v. GEORGE W. YARNEVICH, LARRY G. MICHEL, TOM A. WILLIAMSON, and JAMES R. ANGELL, *Appellees.*

Opinion filed November 21, 2008.

*John Terry Moore,* of Moore Martin, LC, of Wichita, for appellant.

*Lynn D. Preheim,* of Stinson Morrison Hecker LLP, of Wichita, for appellees.

Before HILL, P.J., MCANANY and STANDRIDGE, JJ.

HILL, J.: This lawsuit pitted attorney Daniel K. Diederich, plaintiff, against the stockholders in his former law firm, Kennedy Berkley Yarnevich & Williamson, Chartered, of Salina. The stockholders are Defendants George W. Yarnevich, Larry G. Michel, Tom A. Williamson, and James R. Angell. Using several theories—breach of contract, breach of fiduciary duty, tortious interference with a contract, and civil conspiracy—Diederich sued the stockholders after he was fired. The district court granted summary judgment to the Defendants while denying Diederich's motion for partial summary judgment. Diederich appeals, contending error in all the court's rulings. A corporation acts through the work of its officers, directors, and employees. Because the Defendants are stockholders and directors of the corporation and they were acting within

the scope of their duties when they dismissed Diederich for cause, we hold Diederich's claims do not survive summary judgment. We affirm.

*The background facts show a working relationship decaying after Diederich altered some time records.*

Diederich is an attorney licensed to practice law in Kansas. He began his career at the firm Kennedy, Berkley, Yarnevich & Williamson, Chartered, a Kansas professional corporation, in 1983. Diederich became a stockholder in 1987. The defendants are lawyers and stockholders of the firm. During the period at issue in this litigation, stockholder Tom Kennedy was president of the corporation. Kennedy died in January 2005, before Diederich sued.

● *Controlling agreements and bylaws*

Since this is a professional corporation made up of lawyers, it naturally had several written contracts and bylaws drafted to govern its group. Diederich and the other stockholders signed amended employment agreements in January 2004. These agreements controlled all aspects of their employment with the corporation. Diederich, at the time, was a member of the board of directors and agreed to and approved the terms of the amended employment agreement. Therefore, beginning March 1, 2004, the deferred compensation agreement, amended employment agreement, stockholders' agreement, corporate bylaws, and articles of incorporation governed Diederich's relationship with the firm.

The amended employment agreement provided the employment relationship between the corporation and the attorney "shall continue indefinitely until terminated . . . by either party serving written notice on the other party at least thirty (30) days prior to the effective date of such termination of employment." The stockholders' agreement stated that if a stockholder were no longer employed by the corporation, then the stockholder had to sell his or her stock to the corporation according to the terms outlined in the agreement. The corporate bylaws require a 10-day written notice for special stockholder meetings. A stockholder can waive the no-

tice requirement either before or after the meeting. The bylaws also state:

"Any action required to be taken at a meeting of the stockholders, or any other action which may be taken at a meeting of the stockholders, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the stockholders entitled to vote with respect to the subject matter thereof."

The bylaws call for a 5-day notice to members of the board of directors before any special meeting of the board. This notice requirement can be waived before or after the meeting. Normally, a board member's attendance at such a meeting amounted to a waiver of notice unless the director attended the meeting in order to object to transacting any business because the meeting was not properly called.

Nonetheless, the lawyers did much of the firm business informally, often at lunch meetings. They set stockholders' and directors' meetings often by e-mail, rather than by sending formal notices as set out in the bylaws. Diederich admits that they transacted much of the business at stockholders meetings for which no formal notice was given to the stockholders. The lawyers rarely prepared minutes for meetings where they transacted business. If the business needed something in writing, the firm would prepare a consent to any action taken after the fact. Diederich admitted that he was not aware of any minutes, corporate consents, or resolutions about the hiring or firing of employees.

- *Altered time sheets*

On March 1, 2004, a prebilling ledger was prepared that reflected all the legal work done for a particular client on a probate estate dating back to 2001. When the ledger was prepared the firm had not yet sent a bill to the client. Prebill ledgers contain important data. They show the identity of the client, the attorney, the date of services, the attorney who did specific work, a description of the work done, the total hours worked by each attorney, and the total fees for those services. The attorneys who worked on this matter were Diederich, Cochran, and Michel.

The attorneys had a chance to correct these prebilling ledgers before they sent the final bill to the client. Diederich admitted that on the day they printed one ledger, he altered the figures by crossing out Cochran's and Michel's initials next to work they had done and replacing them with his own initials. After Diederich altered the ledger, he gave it to his assistant.

Cochran saw the ledger on Diederich's assistant's desk and told others about the changes. Later that day, all stockholders except Kennedy called Diederich into a meeting to discuss the ledger. Diederich said he was justified in making the changes and that he believed he had done nothing wrong. The other stockholders did not believe Diederich should take credit for the other lawyers' work. As a result, they did not enter the changes into the system.

- *Admissions by Diederich*

Diederich admitted that he did not do the work for the entries he changed. He admitted he made the changes intentionally so he could get credit for the time. The changes would have allowed Diederich to bill for 37.5 hours instead of the 16.2 that he recorded for the client. Though the altered entries were for work done in 2001, the bonus program in effect in 2004 stated that for fixing bonus compensation, they would credit an associate for revenues collected in a given year for work billed in that year. Diederich admitted that making the changes to the ledger would have affected the attorneys' collections for the year.

Through informal discussions about what Diederich had done, the other stockholders agreed that they should dismiss Diederich. They held no formal stockholder or director meeting about Diederich's continued employment. They drafted a notice of termination, which stated that they were firing Diederich as an employee of the firm, effective April 30, 2004. Kennedy, as president, signed the letter. All the other stockholders then signed the letter, stating they approved and confirmed Diederich's termination.

On March 30, 2004, they asked Diederich to come to the conference room, and when he arrived, they immediately gave him the written notice of his termination. All the stockholders were present. Diederich tried to explain why he believed he had done

nothing wrong. Diederich did not contest the action taken at this meeting, but he claimed they improperly held prior meetings without notice. Diederich admitted that if they held a formal meeting of directors and all the directors voted to fire him, he could not have prevented his termination.

Diederich has not been practicing with the firm since May 14, 2004. Since then, Diederich has been practicing on his own and billing his clients directly. They compensated Diederich for the legal work he did between April 30, 2004, and May 11, 2004. Following his termination, Diederich and the firm differed on how much compensation he was entitled to under the amended employment agreement. Diederich also asserted the corporation manipulated its financial statements to reduce the amount it owed Diederich for his stock under the stockholders' agreement.

Diederich contended he was still a stockholder and director after his termination because he had not agreed to a purchase value for his stock. Diederich refused the deferred compensation checks the firm offered him because he believed it had not fired him and he was not given an opportunity to take part in the stockholders' or directors' meetings at which the decision was made to prepay deferred compensation.

Because Diederich contended he was still a director, at a directors' meeting on December 20, 2004, all the directors, other than Diederich, voted to dismiss Diederich as a director. Diederich tried to vote his shares to block his removal. The Defendants refused to recognize Diederich's vote.

The stockholders' agreement and the amended employment agreement contain arbitration terms. On October 21, 2004, the firm filed a motion to compel arbitration because the parties were unable to resolve their disputes about Diederich's termination. The motion was granted. Diederich and the firm began arbitration in November 2004. The issues in arbitration included whether Diederich was properly terminated and whether the corporation breached the amended employment agreement or any of the corporate governance documents. Several claims were determined in arbitration. The first issue was whether the firm had given proper notice of meetings and if it properly called the meetings. The sec-

ond was whether the firm properly removed Diederich as an employee, stockholder, and director. The third issue was whether arbitration was proper and what the corporation owed Diederich, if anything, under the terms of the various agreements.

Diederich filed his petition against the Defendants, claiming a breach of fiduciary duty, tortious interference with contracts, breach of contract, and civil conspiracy claims. He then filed a motion for partial summary judgment. In turn, the Defendants filed their own motion for summary judgment.

Later, the arbitration panel delivered its rulings. After that, the Defendants filed a supplemental memorandum in support of their motion for summary judgment, arguing the arbitration panel's decision provided the district court with collateral estoppel as an additional reason to dispose of Diederich's claims against them.

*We list some fundamental points concerning summary judgments.*

The legal path to summary judgment is well worn. When we examine such questions we use the same rules as the district court:

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" ' [Citation omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

We will first look at the judgment granted the Defendants for Diederich's breach of fiduciary duty claim and then his contentions concerning their tortious interference with contracts. After that, we focus on his civil conspiracy claims followed by the question of whether Diederich's claims are really just disguised breach of contract allegations. Finally, we deal with the "one-action" rule and the issue of collateral estoppel arising from the parties' arbitration.

*Diederich failed to allege facts of any alleged breach of a fiduciary duty.*

The law is clear on this point. Officers and directors of a corporation have a strict fiduciary duty to act in the best interests of the corporation and its stockholders. This duty requires officers and directors to work for the general interests of the corporation and the stockholders. *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 467, 790 P.2d 404 (1990); *Sampson v. Hunt*, 233 Kan. 572, 584, 665 P.2d 743 (1983). Directors also owe the same fiduciary duty between themselves. 233 Kan. at 584. And fiduciary relationships can be created in certain circumstances, depending on the facts surrounding a special relationship between parties. *Olson v. Harshman*, 233 Kan. 1055, 1058, 668 P.2d 147 (1983).

Diederich argues this cause of action should have survived summary judgment because there is a genuine issue of material fact of whether a special relationship exists that would cause Defendants to owe him a fiduciary duty. Diederich also claims that since Defendants owed him a fiduciary duty, whether there was a breach of that duty is a question of fact sufficient to preclude summary judgment. Diederich's argument on appeal is simply that a fiduciary duty exists between himself and Defendants and, therefore, a trial should be held to determine whether there was a breach of that fiduciary duty.

Unfortunately, Diederich has neither alleged facts to support his claim that there was a breach, nor tied these breach allegations to any of the damages he claims. Diederich's claims are based on the actions taken by Defendants in terminating Diederich's employment with the firm. Fiduciary duties owed by directors and officers do not extend to employees of the firm. Directors do not breach their fiduciary duty if they fire an employee, who is also a shareholder, for a legitimate business reason. See *Richards v. Bryan*, 19 Kan. App. 2d 950, 962, 879 P.2d 638 (1994). Simply put, Diederich has not offered any genuine issues of disputed material facts that would support this claim and prevent summary judgment.

*The claim of tortious interference with contract cannot survive summary judgment.*

The logic employed by the district court on this point was impeccable. The district court found that corporate officers cannot interfere with an employment contract involving one of the corporation's employees. Thus, directors and officers of a corporation cannot be liable for tortious interference with an employment contract that they have legal authority to cancel. On appeal, Diederich argues that the district court's finding that Defendants could not be liable for tortious interference with contract as a matter of law was erroneous and there remains disputed issues of material fact precluding summary judgment on this issue.

The law recognizing this cause of action is well settled. In Kansas, a person who, without justification, induces or causes a breach of contract will be answerable for any damages caused thereby. *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423, 77 P.3d 130 (2003). The five elements of a tortious interference with a contract claim are: " ' "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." ' [Citations omitted.]" 276 Kan. at 423.

We must point out that Diederich has not specifically identified the contracts he is claiming Defendants interfered with. He maintains the Defendants admitted to trying to terminate him. But the Defendants have always maintained that Diederich's employment contract was properly terminated. This failure to identify the contract or contracts causes us to question whether Diederich has argued a cause of action for tortious interference with a contract.

Nonetheless, it is clear that the district court in its ruling on this point stands on firm ground. In *Clevenger v. Catholic Social Service of Archdiocese of Kansas City*, 21 Kan. App. 2d 521, 526-27, 901 P.2d 529 (1995), the court held an official of a corporation, acting for the corporation, and within the scope of his or her representation of the corporation, cannot be liable for tortious interference with a contract the corporation could legally act on. In *Clevenger*, this court determined that corporate directors could not

be held liable for inducing the corporation to terminate employment that the corporation could legally terminate. This is reasonable. When conducting business on behalf of a corporation, the corporate officers and directors are acting on the corporation's behalf, and one cannot tortiously interfere with a contract unless he or she is a third party unrelated to the contract. 21 Kan. App. 2d at 526-27. See also *Macke Laundry Service Ltd. Partnership v. Mission Assocs., Ltd.*, 19 Kan. App. 2d 553, 873 P.2d 219 (1994) (stating that a "claim for tortious interference with a contractual relationship requires the existence of a valid and enforceable contract at the time of the interference between the plaintiff and a *third party*." [Emphasis added.]). After all, the employee is employed by the corporation, not the directors or the stockholders. It is the corporation acting, not the directors.

Diederich recognizes this legal theory but argues it is a question of fact for the jury to decide whether the Defendants were acting outside the scope of their employment or for their own individual advantage when he was fired. To support his claim, Diederich states that Defendants engaged in a number of dishonest actions to accomplish their personal goal, including creating false minutes for a meeting, denying that such a meeting took place, and hiding corporate assets in order to avoid paying Diederich.

Those facts do not allege a cause of action for tortious interference with a contract. There must be something more. That cause of action requires evidence in addition to a breach of contract. The facts relied on by Diederich merely state Diederich's reasons for believing his employment contract was improperly terminated and his payments under the shareholder and other agreements were wrongly calculated. None of these facts allege Defendants were acting outside their authority as directors of the corporation in terminating Diederich's employment.

As well as failing to show what contract had been breached in this cause of action, Diederich has also failed to provide evidence showing the Defendants were acting outside the scope of their employment. He has not shown they were acting for their own individual advantage or that the Defendants were not acting for the benefit of the corporation. We find no error on this point.

*With no evidence of an underlying tort the claim of civil conspiracy
cannot survive.*

The district court ruled the claim for civil conspiracy failed be-
cause no underlying tort existed and because officers and directors
of a corporation cannot conspire with themselves when acting on
behalf of the corporation and within the scope of their authority.
We agree.

The elements of a civil conspiracy are:

" '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the
minds in the object or course of action; (4) one or more unlawful overt acts; and
(5) damages as the proximate result thereof.' [Citation omitted.] Conspiracy is not
actionable without commission of some wrong giving rise to a cause of action
independent of the conspiracy." *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678
P.2d 153 (1984).

We have already ruled that there is no valid claims for breach
of fiduciary duty and tortious interference with contract in this
case, so those theories cannot support a civil conspiracy claim. On
the other hand, Diederich argues that the district court erred in
finding no underlying tort because he believes his tort claims sur-
vive summary judgment. We are not so persuaded.

Going further, Diederich claims the district court erred in find-
ing that officers and directors of a corporation cannot conspire with
each other. Diederich argues the district court's reliance on *Vulcan
Materials Co. v. Atofina Chemicals Inc.*, 355 F. Supp. 2d 1214 (D.
Kan. 2005), was misplaced. Diederich claims that *Vulcan* only
states that a corporation cannot conspire with itself and does not
state that officers of a corporation cannot conspire together.

In *Vulcan*, the issue was whether two entities were guilty of
conspiracy, and the court determined that the entities were under
the same general ownership, so they were the same corporation,
which was unable to conspire with itself. 355 F. Supp. 2d at 1239.

It is difficult to see how a corporate director or officer can be
liable for conspiring with other directors and officers to do some-
thing on behalf of the corporation those directors and officers are
representing. In fact, *May v. Santa Fe Trail Transportation Co.*,
189 Kan. 419, 370 P.2d 390 (1962), the case the *Clevenger* court,
21 Kan. App. 2d at 526-27, relied on in analyzing whether corpo-

rate directors could tortiously interfere with an employment contract, actually involved a civil conspiracy claim.

In *May*, the plaintiff sued the corporation and three of the corporation's officials for civil conspiracy. The *May* court stated: "Merely adding the words and phrases, 'conspiracy,' 'deliberate fraud and subterfuge,' 'deliberately, wrongfully and without just cause,' and 'unlawfully and wrongfully,' to an action for alleged breach of contract of employment does not transform the action into one based upon conspiracy." 189 Kan. at 423. The court determined that the corporate defendant could not be guilty of conspiracy with itself, and the only question remaining was whether the individual defendants were without privilege to take the actions alleged. The court then decided it had to analyze whether the officers were acting on behalf of the corporation or in their individual capacities or for their individual advantage. The court stated:

"Where, as here, the individual defendants are named and described as officials of the corporate defendant in the petition, with no allegations that these defendants acted other than in their official capacities on behalf of the corporate defendant, and no allegation remotely indicates that they were pursuing their course as individuals or for individual advantage, the acts of the individual defendants must be regarded as the acts of the corporation, and when so acting they cannot conspire with the corporation of which they are a part. [Citation omitted.]" 189 Kan. at 424.

Diederich has not alleged anything other than the Defendants breached the agreements they all entered into when organizing as a corporation. As in *May*, Diederich has not asserted facts that would elevate this to anything more than an issue of breach of an employment contract. 189 Kan. at 425.

Diederich argues that corporate officers can be guilty of conspiracy because the court held directors and shareholders liable for conspiracy in *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 724-26 (10th Cir. 1984). In *Wegerer*, the plaintiffs sued a corporation and its two directors, officers, and shareholders. The plaintiffs prevailed at trial, and the defendants argued on appeal the district court erred in instructing the jury on civil conspiracy because the evidence failed to prove the directors were acting outside their official capacities on behalf of the corporation.

The Tenth Circuit Court of Appeals determined there was sufficient evidence to establish the directors and an employee of the corporation were acting outside the scope of their employment when they committed fraud against the plaintiffs. Specifically, the defendants had signed a consent decree stating they would not make misrepresentations and engage in other unlawful conduct, but the plaintiffs provided evidence that the defendants did things prohibited by the consent decree. 744 F.2d at 726.

It is clear that *Wegerer* was a fact-specific case, and it does not support Diederich's claims in this appeal. Diederich has not presented a fact question about whether the Defendants were acting outside the scope of their duties as directors of the corporation. The district court did not err in granting summary judgment in favor of Defendants on Diederich's conspiracy claim.

*We cannot agree with the district court about mixed causes of actions.*

The district court decided Diederich's tort claims failed because he could not meet his burden of proving he suffered *additional* damages independent of his contract damages which were the subject of the parties' arbitration. (The district court denied Diederich's motion to vacate the arbitration award, and Diederich has appealed that denial in a separate appeal No. 99,423.) The district court held the underlying facts and damages were the same in this cause of action as in Diederich's arbitration proceeding. On that basis, the court granted summary judgment.

Whether tort and contract claims can be brought in the same case is a question of law, which this court reviews de novo. See *Bittel v. Farm Credit Svcs. of Central Kansas, P.C.A.*, 265 Kan. 651, 962 P.2d 491 (1998). "[W]hen . . . conduct could satisfy the elements of both a breach of contract or of an independent tort, unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies." 265 Kan. at 660. However, the independent tort must cause damages beyond those suffered by breach of contract. See *Heller v. Martin*, 14 Kan. App. 2d 48, 54-55, 782 P.2d 1241 (1989).

This case differs from the cases relied on by the district court. Here, while the Defendants acted on behalf of the corporation in terminating and enforcing the contracts, Defendants were not actually parties to the contracts. But Diederich's tort claims are subject to summary judgment for other reasons. The district court erroneously relied on these being disguised breach of contract claims. Because the district court had other valid reasons to grant summary judgment on the tort claims, this error does not require reversal. See *In re Marriage of Bradley*, 282 Kan. 1, 8, 137 P.3d 1030 (2006) ("If a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground.").

*We discuss the one-action rule and splitting causes of action.*

The district court ruled Diederich's tort claims failed as a matter of law because Diederich was prohibited from splitting his cause of action. In the district court's view, he should have litigated all of his claims arising out of this one wrong in a single action. The district court ruled Diederich violated the one-action rule.

One purpose of the rule against splitting a cause of action is to protect defendants from multiple lawsuits on a single cause of action. The one-action rule differs from res judicata. Res judicata requires identical parties to apply, but the one-action rule does not. See *Home State Bank v. P.B. Hoidale Co.*, 239 Kan. 165, 169, 718 P.2d 292 (1986) (distinguishing the rule against splitting a cause of action from the doctrine of res judicata and finding that the rule applies even though same parties were not involved in the many lawsuits filed by the plaintiff). "The rule against the splitting of a cause of action is based upon varied and justifiable concerns: preserving judicial economy and convenience; avoiding repetitive or fragmented litigation; and protecting a party from multiple harassment and expense over the same claim." 239 Kan. at 169.

To the contrary, Diederich argues his tort claims could not have been brought in the same cause of action as his arbitration claims because under K.S.A. 5-401(c)(3), tort claims are not subject to arbitration. But that statute does not state that tort claims are not subject to arbitration; rather, it states a written contract cannot

include a mandatory arbitration clause for tort causes of action arising between the parties.

Case law provides guidance. "[U]nder Kansas law, there can be no mandatory arbitration of an action sounding in tort." *Beeson v. Erickson*, 22 Kan. App. 2d 452, 454, 917 P.2d 901 (1996). The *Beeson* court decided the plaintiffs' claims failed because they were attempting to bring an action that arose out of the performance of a contract but called it a tort action in order to render the mandatory arbitration clause in the agreement null and void. 22 Kan. App. 2d at 462-63.

This case is distinguishable from *Beeson* because these claims are not merely contract claims disguised as tort claims. And, it is not that Diederich chose to sue under tort theory instead of contract theory. Diederich simply failed to raise his tort claims in the arbitration case even though they were based on the same conduct, which was the subject of litigation in the arbitration case. Diederich should have brought his tort claims against Defendants in the same litigation as the arbitration proceeding. The district court did not err in granting Defendants' summary judgment motion based on the one-action rule.

*The arbitration award cannot be used as collateral estoppel as it is not final.*

We turn now to the issue of collateral estoppel. Diederich argues the district court erred in relying on collateral estoppel to deny Diederich's claims. The Defendants failed to address this issue in their brief.

Collateral estoppel has three requirements. First, there must be a prior judgment on the merits arising from the same factual circumstances and that judgment determines the rights and liabilities of the parties. Second, the parties must be the same or in privity in both actions. Third, a litigated issue that was determined in the first action must be necessary to support that judgment. See *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 506, 86 P.3d 513 (2004). Collateral estoppel may be based on a judgment confirming an award of arbitration. *L.R. Foy Constr. Co. v. Professional Me-*

*chanical Contractors*, 13 Kan. App. 2d 188, 195, 766 P.2d 196 (1988).

However, in this case, the arbitration panel's award has been appealed, so it is not final. Even though appellate courts have a very limited scope of review when considering arbitration awards, Diederich is correct that the arbitration decision is not yet final. See *City of Coffeyville v. IBEW Local No. 1523*, 270 Kan. 322, 334, 14 P.3d 1 (2000); *Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 278-79, 624 P.2d 952 (1981) (finding res judicata inapplicable when time for appealing case to be relied on has not yet passed).

If the arbitration award is set aside on appeal, it would not have a collateral estoppel effect on this case. If Defendants wanted the arbitrator's award to have collateral estoppel effect on this case, they should have requested a stay until the arbitration case was final. See *L.R. Foy Constr. Co.*, 13 Kan. App. 2d at 190 (where defendant that was sued by plaintiff but believed it was in privity with another party subject to arbitration with plaintiff moved to stay action until arbitration was decided). The district court erred in relying on collateral estoppel to deny Diederich's claims. But, because the district court properly granted summary judgment on other grounds, this error does not require reversal. See *In re Marriage of Bradley*, 282 Kan. at 8.

Affirmed.