NOT DESIGNATED FOR PUBLICATION

No. 117,539

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KERRY PATRICK,
*Appellant*,

v.

BOKF, N.A., dba BANK OF KANSAS CITY, and KAY BALLARD,
*Appellees.*

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed March 16, 2018.
Reversed and remanded with directions.

*William M. Modrcin*, of Johnston, Ballweg & Modrcin, L.C., of Overland Park, for appellant.

*Juliann W. Graves*, of Mullins & McMillan, P.A., of Overland Park, and *Leslie C. Byram*, of
Leslie C. Byram, P.A., of Prairie Village, for appellees.

Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.

BUSER, J.: Kerry Patrick and Kay Patrick Ballard are joint beneficiaries of several
trusts for which Patrick served as trustee from late 2011 until March 16, 2015. On this
latter date, the Johnson County District Court ordered that Bank of Kansas City (the
Bank) replace Patrick as trustee. Thereafter, the Bank began to marshal all assets of the
trusts for an in-kind distribution to Patrick and Ballard. Frustrated by what he viewed as
unreasonable delays in this process, Patrick filed this lawsuit against the Bank, alleging
violations of the Kansas Uniform Trust Code (KUTC) and breach of fiduciary duty. The
Bank counterclaimed, asserting in relevant part, that Patrick tortiously interfered with the

1

administration of the trusts. After a bench trial, among other rulings, the district court found Patrick liable for tortious interference and awarded no damages but granted $80,000 in attorney fees to the Bank.

On appeal, Patrick does not challenge the adverse rulings by the district court on the principal claims made in his lawsuit. He does appeal, however, the district court's judgment in favor of the Bank on its tortious interference counterclaim and the award of $80,000 in attorney fees to the Bank. Upon our review of the parties' briefs, oral arguments, and the record on appeal, we reverse the district court's judgment in favor of the Bank on the tortious interference counterclaim. We also reverse the award of attorney fees in the amount of $80,000 and remand with directions that, in light of our holding, the district court reconsider the amount of attorney fees to be awarded the Bank.

FACTUAL AND PROCEDURAL BACKGROUND

Patrick and Ballard, as brother and sister, are beneficiaries of the Gerald H. Patrick Trust, Phyllis Johnson Patrick Trust, and Esther Johnson Trust (the Trusts). Following the death of their father, Gerald H. Patrick, in October 2011, Patrick and Ballard became cotrustees of the Trusts. The Trusts consisted of brokerage accounts and a stock portfolio.

Ballard filed three lawsuits against Patrick in May 2014 in the Johnson County District Court, which were later consolidated into the single case of *Kay Ballard v. Kerry Patrick*, case No. 14 CV 3226. As part of this lawsuit, both Ballard and Patrick requested that the district court appoint a successor trustee, who would bring the Trusts to a final distribution and termination. On February 13, 2015, the district court selected the Bank to serve as trustee for the Trusts. As sole trustee, the Bank was charged with overseeing the in-kind distribution of all assets from the Trusts to Ballard and Patrick.

2

The Bank did not formally accept its role as trustee until March 16, 2015, and, thereafter, took few discernible steps towards distribution of the Trusts' assets. Rankled by these delays, Patrick filed this lawsuit against the Bank and Ballard on June 16, 2015, in an effort to remove the Bank as trustee. His complaint alleged, in part, that the Bank had failed to "act diligently in accepting successor trusteeship . . . act diligently in taking control of the Trusts' assets . . . manage and protect the Trusts' assets . . . respond to requests for information . . . provide an accounting; and . . . to act to distribute the Trusts' assets." Later, in his amended complaint, Patrick asserted two causes of action against the bank: (1) multiple breaches of the Kansas Uniform Trust Code (KUTC) (K.S.A. 58a-101, et seq.), and (2) breach of fiduciary duty.

In its answer, the Bank denied the claims asserted in Patrick's complaint and filed counterclaims against him for (1) tortious interference with a contract, business relationship, or advantage; and (2) an accounting of the trust assets. On a related note, Ballard also denied the allegations in Patrick's complaint and filed a counterclaim against him seeking attorney fees under K.S.A. 58a-1004.

The case proceeded to a bench trial. At trial, the Bank presented evidence that Patrick had continued to represent himself as trustee of the Trusts until June 1, 2015, even though his authority as trustee ended two and a half months earlier, on March 16, 2015. Indeed, the district court found that Patrick admitted "he traded Trust assets at least eight times after his tenure as Trustee ended, beginning on April 17, 2015, through at least September 18, 2015." The evidence also showed Patrick caused difficulties for the Bank when he reported some treasury bonds lost, but then refused to disclose the location of the replacement bonds issued to him. Additionally, Patrick's own expert witness testified that an in-kind distribution of trust assets could take at least six months to complete.

3

Based on the trial evidence, the district court found Patrick "did interfere with the administration of the Trusts . . . [and] disingenuously misrepresented that he was still Trustee after he had been removed, and acted without authority." Patrick, the district court noted, "did not [cooperate] . . . [and] did what he could do to make [the Bank's] administration more difficult." The district court entered judgment for the Bank on the tortious interference claim. Additionally, the district court found the Bank had failed "in its claim for further accounting [of Patrick]"; and, although the Bank had "breached its duty to communicate with the beneficiaries as a matter of law," Patrick had not suffered any damages as a result.

With regard to attorney fees, the district court determined the Bank would "bear its own defense expenses for the failure to communicate claim and its failed accounting claim, rather than recouping expenses from the Trusts," but added, "Patrick's portion of the final distribution may be charged with all the additional administration costs he caused and attorney fees to be determined by the Court." Later, after the Bank submitted fee statements, the district court ordered Patrick to pay $80,000 in attorney fees to the Bank.

Patrick timely filed this appeal.

TORTIOUS INTERFERENCE COUNTERCLAIM

On appeal, Patrick does not challenge the district court's adverse judgment regarding his KUTC and breach of fiduciary duty claims. Instead, he contends the district court erred in ordering judgment in favor of the Bank based on his tortious interference with the administration of the Trusts. In particular, Patrick argues that as a beneficiary of the Trusts he cannot be liable for tortious interference.

4

Preliminarily, the Bank counters that Patrick failed to preserve this issue for appeal because the pretrial order did not "contain any claim or defense by Patrick that the Bank's claim for tortious interference fail[ed] as a matter of law . . ." The Bank cites authority in support of this argument, including *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 18-19, 61 P.3d 68 (2002), wherein our Supreme Court held: "The pretrial order under K.S.A. 2001 Supp. 60-216(e) controls the course of the action unless modified to prevent manifest injustice. An issue or claim for relief that is not contained in the pretrial order should not be entertained by the trial court. [Citations omitted.]" See *Classico, LLC v. United Fire and Casualty Company*, No. 114,833, 2016 WL 7324451, at *11 (Kan. App. 2016) (unpublished opinion). The Bank reasons that because Patrick did not raise this issue in the pretrial order, and because his brief fails to explain why the argument was not raised below, he has failed to preserve this issue for appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011); Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34).

We disagree. The portion of the pretrial order labeled "Patrick's Defenses to the Counterclaim" reads, "Count II of the Bank's Counterclaim [for tortious interference] fails to state a claim upon which relief may be granted." Additionally, Patrick's posttrial brief stated: "As a matter of law, tortious interference cannot apply to a person who is a party to the contract . . . only a stranger to a contract can commit tortious interference." In that same brief, Patrick also asserted: "[T]he Bank's counterclaim against Patrick must fail since it fails to prove any actual damages." Considered together, we find Patrick preserved his tortious interference argument for appellate review.

When reviewing a mixed question of fact and law, our court applies a bifurcated standard of review. The district court's factual findings are reviewed under the substantial competent evidence standard, while the legal conclusions derived from those facts are subject to unlimited review. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196

5

(2014). Here, Patrick challenges the district court's legal conclusion that he was liable to the Bank for tortious interference involving the Trusts. Our review is unlimited.

Regarding the merits of the district court's ruling that the Bank prevailed on its tortious interference counterclaim, we first note the parties differ as to their characterization of the tortious interference at issue which formed the basis of the Bank's counterclaim. Patrick frames the issue as one involving tortious interference with an existing contract. On the other hand, the Bank characterizes the claim as one where a business relationship between the Bank and the Trust beneficiaries was created for which there was an expectancy of future economic benefit. Regardless, the contentious issue presented by both parties on appeal is whether a tortious interference claim must be brought by a third party and, if so, whether Patrick was a third party as relates to the relationship between the Bank and the Trust beneficiaries.

"Tortious interference with a prospective business advantage or relationship seeks to protect future or potential contractual relations and is predicated on malicious conduct by the defendant." *M West, Inc. v. Oak Park Mall*, 44 Kan. App. 2d 35, 56, 234 P.3d 833 (2010) (citing *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106 [1986]). The elements of tortious interference with a business relationship are:

> "(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct." *Turner*, 240 Kan. at 12.

See PIK Civ. 4th 124.92 (2012 Supp.).

6

Kansas courts have held that a party may be found liable for tortious inference only if "[t]he conduct complained of [was] accomplished by a third party unrelated to the business relationship between the principal parties." *Hart v. U.S.D. #244 Board of Education*, No. 110,172, 2014 WL 3020476, at *4 (Kan. App. 2014) (unpublished opinion) (citing *Diederich v. Yarnevich*, 40 Kan. App. 2d 801, 809-10, 196 P.3d 411 [2008]).

Although the district court here did not explicitly find that Patrick qualified as a third party, its determination that Patrick was liable for tortious interference necessarily implies that it considered Patrick was a third party when he interfered with the Trusts. Patrick, however, challenges this notion, arguing that he could not interfere with the administration of the Trusts when he was a party to them. In other words, Patrick contends that, as a matter of law, he could not interfere with the business relationship between the Bank (as trustee) and the Trust beneficiaries (Patrick and Ballard) because he was not a third party.

The Bank acknowledges *Hart* and *Diederich*, but reasons that Patrick in his "sham capacity as continuing 'Trustee'" or "'false Trustee'" was, in fact, a third party who interfered with the administration of the Trusts. To this end, the Bank seeks to categorize Patrick into three separate roles or "three capacities . . . as to the Trusts' assets," which the Bank defines as: (1) Patrick the beneficiary, (2) Patrick the former trustee, and (3) Patrick the "false 'Trustee'" who "interfered with the administration of the [Trusts]." In this third capacity, as a "false 'Trustee,'" the Bank argues that Patrick "put on the *identity of a stranger or third party* separate and apart from his identity as beneficiary." (Emphasis added.) In sum, the Bank posits that whether Patrick was a former trustee or false trustee, he was essentially a third party for purposes of the Bank's tortious interference claim.

We have found no legal authority to support the Bank's proposition—and the Bank does not cite any—perhaps because the notion that Patrick could be both a stranger and a

party to the Trusts at the same time seems incongruous. For example, Black's Law Dictionary 1708 (10th ed. 2014) defines a "third party" as "[s]omeone who is not a party to a[n] . . . agreement . . . someone other than the principal parties." But in a trust agreement, the parties are the settlor, the trustee, and the beneficiaries. 76 Am. Jur. 2d Trusts § 3.

These legal definitions are straightforward and persuade us that Patrick was a beneficiary of the Trusts and, thus, a party to the business relationship with the Bank. Because Patrick was a party to this business relationship and not a third party, he could not, as a matter of law, be found liable for tortious interference with the administration of the Trusts.

To be sure, there was evidence that Patrick violated his duties as a former trustee. For instance, he was obligated to "expeditiously . . . deliver the trust property within [his] possession to the . . . successor trustee," which the evidence shows he failed to accomplish. K.S.A. 58a-707(b). Nevertheless, as a party to the business relationship between the Bank and the Trusts' beneficiaries, Patrick could not be held liable for tortious interference. Accordingly, we reverse the district court's ruling in favor of the Bank on its tortious interference claim.

THE DISTRICT COURT'S AWARD OF ATTORNEY FEES TO THE BANK

Next, Patrick contends the award of $80,000 in attorney fees to the Bank should be reversed because the district court failed to follow *DeSpiegelaere v. Killion*, 24 Kan. App. 2d 542, 947 P.2d 1039 (1997), and there was no competent evidence to support the award. In particular, Patrick complains that the Bank failed to file an affidavit that apportioned or segregated attorney fees with regard to each cause of action involved in the lawsuit.

8

In response, the Bank argues that its award of attorney fees was permissible under K.S.A. 58a-1004 which provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of controversy." The Bank argues that the district court ruled in favor of the Bank on every issue except Patrick's allegations regarding the duty to communicate and the Bank's own claim for further accounting from Patrick. As a result, the Bank asserts the award of attorney fees complied with K.S.A. 58a-1004.

With regard to *DeSpiegelaere*, the Bank argues that this opinion does not apply to trusts, but if it does, the precedent permits an exception to the segregation rule for causes of action which are dependent on the same set of facts and are intertwined to the point of being inseparable. Alternatively, the Bank asserts it essentially followed *DeSpiegelaere*'s apportionment mandate and "followed the express instructions of the [t]rial [c]ourt to mark time entries dealing with the failure to communicate claim and accounting" before submitting its claim for attorney fees. The Bank concludes: "[W]hether under the so-called general rule of *DeSpiegelaere* or the exception thereto, the award was proper."

The assessment of costs and attorney fees lies within the sound discretion of the district court and its determination will not be reversed on appeal absent a showing of an abuse of discretion. If any reasonable person would agree with the district court's decision, appellate courts will not disturb the decision. *DeSpiegelaere*, 24 Kan. App. 2d 542, Syl. ¶ 3; see *Cresto v. Cresto*, 302 Kan. 820, 848, 358 P.3d 831 (2015).

At the conclusion of the bench trial, the district court found that Patrick had failed to meet his burden of proof with regard to the breach of fiduciary duties claim, violation of the prudent investor rules claim, and all but one of his KUTC claims. The only successful claim prosecuted by Patrick—for which the district court did not find any damages—related to the Bank's breach of duty to communicate with beneficiaries.

9

As regards the Bank, the district court found that it prevailed on its tortious interference counterclaim but failed on its claim for a further accounting by Patrick. As a result, the district court specifically found the Bank "shall bear its own defense expenses for the failure to communicate claim and its failed accounting claim, rather than recouping expenses from the Trusts. The Court will review its fee statements from counsel in chambers to determine a reasonable fee to award the Trustee under K.S.A. 58a-1004."

The district court also ruled, however, that "Patrick's portion of the final distribution [of the Trusts] may be charged with all the additional administration costs he caused and attorney fees." The district court then ordered the Bank to submit attorney fee statements—redacting any fees relating to the failure to communicate and accounting claims—for the court to consider. These instructions indicate the district court appropriately believed the Bank could recover attorney fees under K.S.A. 58a-1004 for its successful defense against Patrick's other KUTC claims and the Bank's successful tortious interference claim.

In response to the district court's directive, the Bank submitted a fee statement that totaled almost $95,000. Patrick objected, claiming the fee statement violated *DeSpiegelaere* because it failed to distinguish between those fees the Bank accrued successfully defending against Patrick's KUTC claims and those that arose while asserting its tortious interference counterclaim. In a subsequent ruling, the district court clarified: "The Bank's attorney fee award is based upon K.S.A. 58a-1004. It was not limited by the Court solely to a tortious interference litigation."

Additionally, the district court responded to Patrick's complaint that the Bank's submission was not accompanied by an affidavit. According to the district court: "The Court did not require an affidavit or verification. The Bank's submission from counsel is

10

taken as a submission by officers of the Court who have professional responsibilities to be truthful with the Court and opposing parties."

The district court, however, noted Patrick's complaint about the Bank's "failure to clearly show segregated amounts for various claims and work on those claims or issues" and stated "[Patrick] is correct that the Court could disregard the claim completely." The district court continued: "The failure to segregate time on the billing submissions could be fatal under the rule expressed in *DeSpiegelaere v. Killion*, but is not necessarily so." Ultimately, the district court did not disregard the Bank's claim, opting to independently review the Bank's submission and discount duplicate entries or redundant legal work. In particular, the district court stated that upon its review of the Bank's submission, it "has not allowed fees for work on the issues that it did not allow in the original Memorandum Decision." The district court awarded the Bank $80,000 in attorney fees.

On appeal, both parties focus their arguments on *DeSpiegelaere* wherein this court held:

> "In a lawsuit involving multiple claims or multiple theories, an award of attorney fees must be based on the time spent by the prevailing party's attorney on the claim or theory under which attorney fees are allowable. Where several causes of action are joined and only some of them permit the award of attorney fees, the prevailing party's attorney is under a duty to segregate the work on several causes in determining an attorney fee award." 24 Kan. App. 2d 542, Syl. ¶ 1.

Although *DeSpiegelaere* concerned claims under the Kansas Consumer Protection Act, other panels of this court have applied its principles to a variety of cases. See *Dodge v. Davis Remodeling & Custom Construction, Inc.*, No. 109,092, 2013 WL 5422377 (Kan. App. 2013) (unpublished opinion) (breach of contract); *VHC Van Hoecke Contracting, Inc. v. Murray & Sons Construction Co.*, No. 106,603, 2012 WL 2326027 (Kan. App. 2012) (unpublished opinion) (Kansas Fairness in Public Construction Act);

11

*Banuelos v. Hernandez-Diaz*, No. 103,996, 2012 WL 1919842 (Kan. App. 2012) (unpublished opinion) (personal injury liability).

Our review of the district court's orders persuades us that the district court properly attempted to implement the guidance provided by *DeSpiegelaere.* By directing the Bank to redact any fees relating to Patrick's successful failure to communicate claim and the Bank's failed accounting claims, the district court applied the apportionment principles enunciated in *DeSpiegelaere.* Moreover, the procedure employed by the district court allowed Patrick to review and object to the Bank's attorney fees request.

Still, given our holding reversing the district court's judgment in favor of the Bank on the tortious interference claim, it is apparent that the award of attorney fees to the Bank must be reversed and the case remanded to the district court for reconsideration.

Upon remand, the district court should be guided by K.S.A. 58a-1004 and, as justice and equity requires, award reasonable attorney fees to the Bank. Following the guidelines set forth in *DeSpiegelaere*, the district court shall require the Bank to appropriately segregate its request for attorney fees. The district court's award should include the attorney fees incurred by the Bank in its mostly successful defense of Patrick's claims. The award should not include any fees the Bank incurred which relate to its unsuccessful defense of Patrick's failure to communicate claim, or the Bank's unsuccessful counterclaims alleging tortious interference and its request for an additional accounting. Finally, to insure the reasonableness of its attorney fees award, the district court also should consider Supreme Court Rule 1.5 of the Kansas Rules of Professional Conduct (2018 Kan. S. Ct. R. 294).

Finally, following oral arguments, the Bank filed a motion for attorney fees that it incurred on appeal. Patrick opposed the motion. Upon our review of the motion and in consideration of our holding on appeal, the motion is denied.

Reversed and remanded with directions.