NOT DESIGNATED FOR PUBLICATION

No. 122,242

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

J AND B OIL & GAS, LLC, BRUCE SCHULZ and JESSE SCHULZ,
*Appellees*,
v.

ACE ENERGY, LLC and JONATHAN L. FREIDEN,
*Appellants*.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI BOLTON FLEMING, judge. Opinion filed August 20, 2021. Affirmed.

*Blake Hudson*, of Hudson Law L.L.C., of Fort Scott, for appellants.

*Lisa A. McPherson* and *Amy F. Cline*, of Triplett Woolf Garretson, LLC, of Wichita, for appellees.

Before SCHROEDER, P.J., MALONE, J., and BURGESS, S.J.

PER CURIAM: Jonathan L. Freiden, and his company Ace Energy, LLC (collectively Freiden), appeals the jury verdict and damages entered in favor of J and B Oil & Gas, LLC, Bruce Schulz, and Jesse Schulz for fraud and breach of contract. Freiden raises various claims on appeal, including (1) the district court erred in denying his motion in limine; (2) the district court erred in denying his motion for summary judgment on the fraud claims; (3) the verdict is not supported by sufficient evidence; (4) the district court erred in instructing the jury; (5) the district court erred in denying his motion to compel an election of remedies; and (6) the jury verdict was excessive. Finding no reversible error, we affirm the district court's judgment.

1

This case involves a dispute over the purported sale of an oil and gas lease and a trencher. The jury entered a verdict for fraud regarding the sale of the lease and for breach of contract on the trencher against Freiden, not his company. As a result, the facts will proceed by referring to the defendants collectively as Freiden.

Bruce Schulz owned a company called Double 7 to drill gas and oil wells in Labette and Crawford Counties. In 2008, Bruce acquired the Beachner Lease, which contained 33 oil wells. Bruce and his son, Jesse, then created J and B Oil & Gas (J and B Oil) to work the Beachner Lease. Jesse did an "extensive overhaul" of the Beachner Lease which included replacing old equipment, replacing all the pipe in the wells and pumps, and electrical work. Jesse also worked with the Kansas Corporation Commission (KCC) to get the injection wells and producing wells approved. Jesse testified that his total cost of repairs, not including his sweat equity, totaled $292,475.73.

During the repairs, Bruce and Jesse got five of the wells to produce up to 18 barrels a day, and one day they hit 21 barrels. The seven-day production average for the five wells was 16.08 barrels per day. But the production started to go down as the wells lost their natural pressure, so Bruce and Jesse decided to shut the production down and install a water injection system.

Meanwhile, in 2012, Bruce found out he had prostate cancer, had surgery, and completed other cancer treatments. During this time, the KCC ordered Bruce to plug some wells on another lease operated by Double 7, which he failed to do. As a result, the KCC suspended his operating license.

Freiden discovered the KCC suspended Bruce's license and began to pursue the Beachner lease. In 2013, Freiden called the landowner to try to get the Schultz' lease

2

cancelled but the landowner refused and told Freiden to call Bruce. Freiden then called Bruce about purchasing the Beachner lease. Bruce told Freiden that the Beachner lease was not for sale, but Freiden kept calling so Bruce decided to meet with him. Freiden met with Bruce at the lease and looked around. After about six months, Bruce started to seriously consider selling the Beachner lease because of his health problems. Freiden and Bruce talked several more times on the phone and had two more in person meetings.

On September 14, 2014, Freiden emailed Jesse and told him he had the paperwork drafted for a sale. In the email, Freiden stated that he would pay $40,000 per barrel based on the average production over the first six months as the purchase price. Freiden would pay $10,000 up front and pay the balance after the six-month period. Freiden also mentioned to Bruce that he would be interested in purchasing the equipment.

In October 2014, Freiden told Bruce that he needed a trencher on another lease. Bruce told Freiden that he could buy the trencher for $20,000 or rent it for half the price of a rental in town. Jesse delivered the trencher to Freiden's lease. Dwayne Lansdown, an employee of Freiden's, testified the trencher ran fine when Jesse delivered it.

On October 24, 2014, Freiden emailed Jesse the purchase agreement his attorney drafted. In the agreement, Freiden proposed to pay $50,000 per barrel for the lease to include some equipment in the sale. The agreement also proposed that Bruce and Jesse would finance the purchase for five years. Bruce had three problems with the proposed agreement. First, Bruce told Freiden that he had not agreed to the five-year finance term and that term needed to be removed. Second, the proposed agreement lacked a provision allowing a representative, Jesse, from J and B Oil to be present to oversee the operations during the six-month period, a term Freiden had agreed to in the original meetings. Third, Bruce noticed the proposed agreement listed the wrong county. Freiden told Bruce that he agreed to the three changes and that Bruce's attorney could correct the agreement. Bruce sent the agreement to his attorney for review and to make the three changes.

On November 10, 2014, before Bruce received the revised agreement back from his attorney, Bruce and Freiden met in person. Freiden brought an assignment of oil and gas lease to the meeting. Bruce signed the assignment because Freiden promised Bruce that as soon as Bruce got the revised contract, he would drop everything and sign it. After Bruce signed the assignment, Freiden took him to a bank to have it notarized.

A few days later, Bruce received the revised purchase agreement back from his attorney and tried to call and text Freiden about signing the agreement, but Freiden never responded. Jesse also tried to contact Freiden multiple times. Within a week or two of signing the assignment, Bruce drove by the Beachner lease several times trying to find Freiden and noticed that "everything was tore up." Jesse also went by the lease. Once, he encountered Lansdown on the lease while he was trying to find Freiden. Lansdown called Freiden and told him that Jesse was trying to contact him, and Freiden said, "he was hoping that the son of a bitch would have died by now," referring to Bruce. Freiden told Lansdown in another call that because he had validly purchased the Beachner lease, Jesse had no business out there and Lansdown should call the police if Jesse came back.

Jesse also tried to find the trencher. At one point, Jesse found out its location through neighbors and discovered the trencher's tires were flat, the seat was torn, there were pack rat nests, and wires "jerked out of" the dash. Jesse said the trencher was inoperable. Freiden paid no money to anyone for the Beachner lease. Freiden also paid nothing for the trencher.

More than a year later, on January 15, 2016, Freiden emailed Bruce asking if he wanted the Beachner lease assigned back to him or if he wanted to buy a working interest in the lease. Jesse spoke with Bruce about Freiden's offer and they decided that Freiden had run the lease down and the condition was too poor to accept it back.

*Legal proceedings in district court*

On January 5, 2017, J and B Oil filed suit. The petition advanced several claims: (1) breach of contract by Ace Energy for the Beachner lease; (2) breach of contract for the trencher by Ace Energy or Freiden; (3) fraudulent concealment or fraud by silence by Freiden or Ace Energy; (4) fraudulent or negligent misrepresentation by Freiden and Ace Energy; (5) breach of duty of good faith and fair dealing by Freiden and Ace Energy; (6) promissory estoppel against Freiden and Ace Energy; (7) conversion of the trencher by Freiden or Ace Energy; (8) unjust enrichment against Ace Energy; and (9) accounting.

In May 2017, Freiden called Jesse. During the long phone conversation, which Jesse recorded, Freiden said he knew several bad people who were pissed off at Bruce and could take care of him or shake him up, and that if the lawsuit continued Bruce would end up in a ditch. He also said he knew people who could burn Bruce's house down. Freiden told Jesse he hoped Bruce would die of cancer. Freiden also asked Jesse to help him get rid of the lawsuit by closing J and B Oil. When Jesse stated that he did not have any money, Freiden told him that he knew people who could steal his equipment so Jesse could file an insurance claim.

Freiden filed a motion for partial summary judgment. J and B Oil responded. The district court issued its order on Freiden's motion for partial summary judgment, granting it in part and denying it in part. The district court granted summary judgment on Count 4 for the negligent representation claim but not on the fraudulent misrepresentation claim. The district court also granted summary judgment for Freiden, but not Ace Energy, on Counts 5, 6, 8, and 9. But the district court denied his motion for summary judgment on the remaining fraud claims.

On October 9, 2018, J and B Oil filed its amended petition to reflect the summary judgment ruling, claiming: (1) breach of contract for the Beachner lease against Ace

Energy; (2) breach of contract for the trencher against Freiden or Ace Energy; (3) fraudulent concealment or fraud by silence against Freiden or Ace Energy; (4) fraudulent misrepresentation against Freiden or Ace Energy; (5) breach of duty of good faith and fair dealing against Ace Energy; (6) promissory estoppel against Ace Energy; (7) conversion against Freiden or Ace Energy; (8) unjust enrichment against Ace Energy; and (9) accounting against Ace Energy.

On December 14, 2018, J and B Oil moved to amend the petition to add a claim for punitive damages, which the district court granted. J and B Oil filed the second amended petition, adding Count 10 for punitive damages.

On February 27, 2019, Freiden moved to compel an election of remedies, which the district court denied. On July 29, 2019, Freiden filed a motion in limine, requesting that the statements made by Freiden in telephone conversations with Jesse be excluded. The district court denied the motion except for two portions J and B Oil agreed to redact.

*Jury trial proceedings*

Starting on August 21, 2019, the district court held a three-day jury trial. Bruce testified to the above events and that the Beachner lease was in perfect condition and in good standing with the KCC when he assigned it to Freiden. Bruce testified that during all their conversations, Freiden never mentioned that he wanted to operate the lease on a trial basis before signing the purchase agreement. He asked the jury to award $900,000 based on the five wells producing 18 barrels a day at $50,000 per barrel.

Lansdown testified for J and B Oil. Lansdown testified that the lease was in "decent" condition but there was a brief period when some wells needed a temporary abandonment. Lansdown testified that Freiden told him that he did not want him doing a lot of work in the first six months because the price of the agreement was based on

production in the first six months. Thus, Lansdown had a few wells going up and down, so it looked like something was getting done. Lansdown testified that the trencher ran fine when Jesse delivered it. Lansdown used the trencher at the Beachner lease for about a week until Freiden called at 2:30 in the morning and told him to move the equipment and take it to another lease. Lansdown testified that the last time he saw the trencher, a pack of rats had started to make a mess of it.

Freiden testified that he believed that he would not have to pay anything for the Beachner lease if it did not produce. But when pressed, Freiden admitted that the contract he sent over in October 2014 said nothing about operating the Beachner lease on a trial basis. J and B Oil admitted transcripts of the recorded calls over Freiden's objection. Freiden claimed the phone calls were merely his attempt to settle. Freiden testified that he was still operating the lease and it produced at least four or five barrels a day.

Jesse testified that when Bruce transferred the Beachner lease to Freiden, the lease was in "excellent condition" with "no leaks or outstanding work to be done." But Freiden failed to maintain the lease and the condition became poor. Jesse said there were noticeable oil leaks on the property. He also testified that the injection system did not seem to have been turned on. Jesse testified that Freiden never mentioned wanting to purchase the lease on a trial basis. He believed the production on the lease with all wells running would be around 30 barrels per day. Jesse and Bruce never produced oil under the injection system because Freiden had shown interest in buying the lease.

J and B Oil rested. Freiden moved for a directed verdict on the trencher claim, which the district court denied. Freiden then presented his case.

Freiden called Casey Jesseph, who worked on the Beachner lease starting in February 2016. Jesseph testified that when he started working the Beachner lease there was just general maintenance and a few minor repairs. He testified that there was an

average production of about 2.04 barrels per day in 2016, 2.32 barrels per day in 2017, and 1.38 barrels per day in 2018. Jesseph explained that the lower production in 2018 could be because of a few storms that snapped overhead wiring, which caused production to stop. He also pointed to the extremely wet year in 2019 which prevented some repairs from being done as causing the lower production in 2019. Jesseph testified that he did not believe the lease was ruined and that the amount of production the lease was producing was about what he would expect under the circumstances.

Freiden also testified during his case-in-chief. Freiden testified that he never knew there was a revised agreement that Bruce was trying to get him to sign and that he did not have any missed calls from Bruce. Freiden also claimed that Bruce assigned him the lease so that the lease could be turned on to see what it would produce. He testified that none of the repairs Jesse and Bruce claimed they did on the lease had been done. He testified he never intended to take the lease without paying for it. He intended to either purchase it or return it if it did not produce what Bruce represented. Freiden said he offered to assign the lease back to J and B Oil when it was not producing but Bruce refused to take it back. Freiden admitted that he had paid no money for the Beachner lease.

At the close of evidence, J and B Oil withdrew Count 1 for breach of contract on the sale of the lease, Count 5 for breach of duty of good faith and fair dealing, and Count 7 for conversion. J and B Oil elected to pursue a breach of contract claim for the trencher and its fraud claims for the Beachner lease against Freiden. The district court instructed the jury accordingly. The jury found that Freiden breached his contract on the trencher and awarded $20,000 and found Freiden committed fraud and awarded $750,000. The jury also found that punitive damages should be assessed against Freiden. The district court awarded $93,000 in punitive damages. The district court entered judgment against Freiden in the amount of $863,000, in accordance with the jury verdict and punitive damages award. Freiden timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR IN DENYING FREIDEN'S MOTION IN LIMINE?

Freiden first claims the district court erred in denying his motion in limine requesting the telephone conversations between him and Jesse be excluded from trial. Freiden challenges three categories of statements: statements about Bruce ending up in a ditch; statements about Freiden burning Bruce's house down; and statements about Freiden stealing equipment so that Jesse could make insurance claims. Freiden argues the statements were irrelevant and inadmissible under K.S.A. 60-455.

J and B Oil argues the district court correctly admitted the statements as they were highly relevant. J and B Oil also asserts the statements were a basis for impeachment. J and B Oil asserts that it did not offer the transcripts as K.S.A. 60-455 evidence. J and B Oil also argues the statements were not more prejudicial than probative.

*Preservation*

A party must lodge a timely and specific objection to evidence to preserve the issue for appeal. *State v. Sean*, 306 Kan. 963, 971, 399 P.3d 168 (2017); see K.S.A. 60-404. Freiden does not mention preservation at all in his brief on this this issue. Under Supreme Court Rule 6.02(a)(5), Freiden should have included "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." (2021 Kan. S. Ct. R. 36). He does reference that he filed a pretrial motion in limine addressing the three statements he challenges. But "[w]hen the trial court grants or denies a motion in limine and the evidence is introduced at trial, the moving party must object at trial to the admission of the evidence to preserve the issue for appeal." *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). Thus, Freiden must point to a contemporaneous objection made at trial to preserve his claim.

9

He fails to point to a contemporaneous objection in his brief, but our review of the record reveals that Freiden did lodge a contemporaneous objection to J and B Oil's questions related to the telephone conversations and to its subsequent admission of the transcripts of the telephone calls. Freiden objected citing the arguments raised in his pretrial motion in limine, and the district court overruled his objection.

In his motion in limine, Freiden objected to the statements on the bases of relevance, as impermissible K.S.A. 2020 Supp. 60-455(b) evidence, and as more prejudicial than probative. The district court denied his motion, finding Freiden's arguments went to the weight of the evidence, that the evidence was highly relevant to show the intent and motive of Freiden, that the statements were more probative than prejudicial, and that the statements were statements could be considered admissions against interest.

*Standard of Review*

Generally, "[a] motion in limine is appropriate when:  '(1) the material or evidence in question will be inadmissible at trial; and (2) the pretrial ruling is justified as opposed to ruling during trial.'" *State v. Knox*, 301 Kan. 671, 688, 347 P.3d 656 (2015). We apply a multistep analysis to a challenge of a district court's ruling on a motion in limine:

> "'Under the multistep evidentiary analysis, the first question is relevance. K.S.A. 60-401(b) defines relevant evidence as evidence that is probative and material. On appeal, the question of whether evidence is probative is judged under an abuse of discretion standard; materiality is judged under a de novo standard. The second step is to determine which rules of evidence or other legal principles apply. On appeal, this conclusion is reviewed de novo. In the third step of the analysis, a district court must apply the applicable rule or principle. The appellate court's standard of review of this third step varies depending on the rule or principle that is being applied. Some rules and principles grant the district court discretion, while others raise matters of law. Finally, an analysis under K.S.A. 60-445 may be required, depending on the issue and parties'

10

arguments. Under that statute, a district judge "may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence will be offered." This analysis is reviewed under an abuse of discretion standard.'

"Evaluation of the second factor of the motion in limine test rests in the sound discretion of the district judge and is reviewed for abuse of that discretion. [Citations omitted.] " *State v. Frierson*, 298 Kan. 1005, 1015-16, 319 P.3d 515 (2014).

*Analysis*

Freiden's brief does not identify with specificity or citation to the record which statements he is challenging. In his brief, he lays out the three types of statements he is challenging—a statement "to the effect" that Freiden wanted the lawsuit dropped because it was a nuisance and that Bruce would end up in a ditch if he kept it up; a statement "to the effect" that Freiden told Jesse that guys could take things of Bruce and burn his house down; and statements "to the effect" that Freiden offered to steal equipment and suggested that Jesse could file an insurance claim—and "statements of a 'similar' nature." His reference to statements of a "similar nature" provides this court with no guidance on what statements he is challenging. As a result, we decline to address any other statements than the three types explicitly identified. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (finding an argument inadequately briefed is abandoned).

As for the three types of statements he did identify, he also fails to identify with any specificity which statements he is challenging. In his argument, Freiden cites to his motion in limine, he does not cite to trial testimony or to the statements in the transcript of the telephone conversations that were admitted at trial. Still, our review of the record reveals that the statements Freiden challenges were admitted at trial through testimony and the transcript of the telephone call. First, Freiden testified to telling Jesse in the call to "'make sure your dad drops his trouble against me because it is a nuisance and he's

11

going to end up in a ditch if he keeps it up because I'm not the only one that is mad at him.'" Second, he stated, "'I've got all the guys that can go and take whatever they need off your dad. They will burn his house down.'" Third, Freiden elaborated that "'I've got the people that could go there and take your equipment and you wouldn't have anything to do with it . . . it will be stolen, and then you can file an insurance claim if you want.'"

Freiden first challenges the relevance of the statements. The threshold question of admissibility is whether the evidence is relevant. *State v. Lowrance*, 298 Kan. 274, 288, 312 P.3d 328 (2013). All relevant evidence is admissible unless it is otherwise excluded by statute. K.S.A. 60-407(f). In determining whether evidence is relevant, the trial court must determine whether "there is a material or logical connection between the asserted facts and the inference or result the facts are intended to establish." 298 Kan. at 288. Thus, there is a materiality element and a probative element for relevancy. 298 Kan. at 288. The evidence is material if it supports a fact or issue in dispute, and evidence is probative if it has "a logical tendency to prove a material fact." 298 Kan. at 289. This court applies a de novo standard of review to determining materiality and an abuse of discretion standard to the probative element. 298 Kan. at 289.

Freiden argues that the statements were not relevant because they occurred almost two and a half years after the alleged fraudulent act and none of the challenged statements reference the lease assignment or purchase agreement. J and B Oil asserts that the statements were relevant because they showed Freiden was trying to bribe Jesse or coerce him not to testify, which implies Freiden was conscious of his guilt about committing fraud. J and B Oil also assert that the statements were relevant to prove intent and motive, mainly Freiden's intent not to sign the purchase agreement.

J and B Oil presents a persuasive argument about consciousness of guilt. The Kansas Supreme Court has stated that in criminal cases, evidence showing consciousness of guilt can be material to several issues, including intent. *State v. Huddleston*, 298 Kan.

12

941, 960-61, 318 P.3d 140 (2014) (citing cases from Kansas and other jurisdiction for support). Other jurisdictions have also recognized the attempted bribing or tampering with a witness in a civil case shows a consciousness of guilt or an awareness of the weakness of the case. See, e.g., *Scrivner v. American Car & Foundry Co.*, 330 Mo. 408, 443, 50 S.W.2d 1001 (1932) (finding evidence of trying to bribe a witness admissible to show consciousness of the weakness of cause); *White v. White*, No. CA 03-540, 2004 WL 243039, at *5 (Ark. Ct. App. 2004) (unpublished opinion) (stating evidence of an attempt to bribe witness for favorable testimony showed "awareness of the weakness" of the suit).

Similarly, the statements about potential harm to Bruce or his house and any attempt to help Jesse get an insurance payout on equipment could be considered an attempt to prevent Jesse from testifying. Thus, as J and B Oil asserts, the evidence is material and probative, proving Freiden's consciousness of guilt, which could be used to infer Freiden knew he acted fraudulently in this transaction.

Also, as the district court found, the statements can be used to infer Freiden's intent. Freiden's statements about harming or getting rid of Bruce can be used to infer that Freiden never intended to pay for the lease or go through with the agreement once he got the assignment. And these statements must be considered in tandem with Lansdown's testimony that when Freiden learned that Jesse had come around the lease, Freiden stated he had hoped Bruce would have died by now. It would be a reasonable inference that Freiden had no intention of ever paying for the lease and instead hoped or even would make sure something happen to Bruce before Freiden had to pay for the lease.

To the extent that Freiden argues that the statements could not be relevant to his intent because the statements do not mention the purchase agreement or assignment, his argument is unpersuasive. It is unlikely that there will be direct evidence of a person's fraudulent intent. Instead, circumstantial evidence will often support inferences of intent. See *State v. Gonzalez*, 311 Kan. 281, 288, 460 P.3d 348 (2020) ("Intent is usually proven

13

by inference arising from circumstantial evidence because direct evidence of a defendant's state of mind is rarely available."). Thus, although the challenged statements do not directly reference Freiden's intent about the transaction, as analyzed above, the statements can be used to infer that Freiden never intended to pay for the lease. In sum, the challenged statements were relevant.

The second step of the motion in limine analysis is to determine which rules of evidence or other legal principles apply. On appeal, this conclusion is reviewed de novo. In the third step of the analysis, a district court must apply the applicable rule or principle. The appellate court's standard of review of this third step varies depending on the rule or principle that is being applied. Some rules and principles grant the district court discretion, while others raise matters of law. *Frierson*, 298 Kan. at 1015-16.

But the only argument Freiden makes that would fall under this step of the analysis is that the statements were inadmissible because they were not crimes or civil wrongs contemplated under K.S.A. 2020 Supp. 60-455(b), instead they were, at best, conversations regarding possible future wrongs. But J and B Oil asserts that it did not offer the challenged statements under K.S.A. 60-455. We agree with J and B Oil that the statements did not discuss crimes or civil wrongs as contemplated by K.S.A. 60-455, and that statute is not implicated here.

Finally, the district court did not abuse its discretion by finding that the probative value of the statements outweighed any prejudicial effect. In weighing the probative value of evidence against its prejudicial effect, the district court must determine whether there is a risk of undue or unfair prejudice. *State v. Claerhout*, 54 Kan. App. 2d 742, 753, 406 P.3d 380 (2017). The risk of undue or unfair prejudice "'turns not on whether the evidence is damaging but on whether the evidence is likely to contribute to an improper jury verdict or distract from the central issues at trial.'" 54 Kan. App. 2d at 754.

14

The prejudice about which Freiden complains is not the type of unfair or undue prejudice on which the district court was empowered to exclude evidence. The fact that Freiden's statements were incriminating does not make them prejudicial. All evidence harmful to a defendant's case is by its nature prejudicial. But only evidence that brings about a wrong result under the circumstances of the case is unduly prejudicial. *State v. Clark*, 261 Kan. 460, 477, 931 P.2d 664 (1997).

In sum, the district court did not err in denying Freiden's motion in limine seeking to exclude the recorded telephone conversations based on the arguments Freiden makes on appeal. The statements Freiden challenges were relevant to show consciousness of guilt and to prove fraudulent intent. The district court did not abuse its discretion in finding that the probative value of the statements outweighed any prejudicial effect.

DID THE DISTRICT COURT ERR IN DENYING FREIDEN'S MOTION FOR SUMMARY JUDGMENT ON J AND B OIL'S FRAUD CLAIMS?

Freiden next claims the district court erred in denying his motion for summary judgment on J and B Oil's fraud claims. J and B Oil first asserts that Freiden has not preserved this issue for review. J and B Oil argues that because the district court denied Freiden's motion on the fraud claims, but a jury later heard those claims and entered a verdict, Freiden's challenge to the district court's denial of the motion for summary judgment is waived. Freiden did not respond to this argument in his reply brief.

J and B Oil cites *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 350 P.3d 1091 (2015), to support its argument. In that case, the district court denied the insurance company's motion for summary judgment on a claim that the insured failed to provide a prompt notice of loss. This claim proceeded to jury trial and the jury entered a verdict for the insured. The insurance company appealed the district court's denial of its summary judgment motion. On appeal, the insured argued "that an

appeal of the denial of a motion for summary judgment is not procedurally sound after the court has held a full jury trial on the merits of that issue." 51 Kan. App. 2d at 490. This court agreed and explained that "[g]enerally, a party may not 'appeal an order denying summary judgment after a full trial on the merits' because that 'order retains its interlocutory character as simply a step along the route to final judgment.'" 51 Kan. App. 2d at 490 (quoting *Ortiz v. Jordan*, 562 U.S. 180, 184, 131 S. Ct. 884, 178 L. Ed. 2d 703 [2011]). This court found that a party who lost on summary judgment can preserve the legal issues by incorporating them into a motion for judgment as a matter of law. *Evergreen*, 51 Kan. App. 2d at 490. Ultimately, this court declined to examine the district court's ruling on the summary judgment motion. 51 Kan. App. 2d at 490.

Freiden challenges the district court's denial of his summary judgment motion on J and B Oil's fraud claims. But the fraud claims were submitted to the jury and a verdict was rendered in J and B Oil's favor. Freiden did not move for a judgment as a matter of law on the fraud claims. Applying the reasoning in *Evergreen*, we could decline to revisit the district court's denial of summary judgment on the fraud claims because they were heard by a jury and Freiden never filed a judgment as a matter of law. See *Sigg v. Severt*, No. 118,631, 2019 WL 1213245, at *4-5 (Kan. App. 2019) (unpublished opinion) (declining to review challenge to trial court's denial of summary judgment when party did not move for judgment as a matter of law and the issue proceeded to a jury trial).

But even if we ignore the preservation issue and reach the merits of Freiden's claim on appeal, he has no right to relief. Freiden argues that J and B Oil's fraud claims lacked proof of fraudulent intent. He asserts the only "admissible" evidence supporting intent was the fact that he never signed a written agreement. Freiden claims that the lack of a contract alone cannot establish fraudulent intent because J and B Oil did not present him with a contract for signature when the lease was assigned. He also asserts that no fraud was involved because he offered to reassign the lease back to J and B Oil. Freiden argues that summary judgment was appropriate because J and B Oil failed to establish

16

that it reasonably or justifiably relied on Freiden's promise when it assigned the lease. J and B Oil argues that the district court correctly denied the summary judgment motion because it provided sufficient evidence of fraudulent intent and did not waive any claim.

The district court found that "[t]he parties disagree whether a revised purchase agreement exists" and explained that Freiden claimed he was never presented with one while J and B Oil claims that Freiden agreed to sign the revised agreement at the time of the lease assignment. The district court also found that there were sufficient facts to establish that Feiden never intended to sign the purchase agreement, including the statements he made in the telephone conversations. The district court also pointed out that whether J and B Oil's reliance was reasonable is a question of fact.

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

The existence of fraud is normally a question of fact. *Chism v. Protective Life Ins. Co.*, 290 Kan. 645, 654, 234 P.3d 780 (2010). Intent is usually proven by circumstantial evidence, making summary judgment inappropriate when a state of mind is at issue. *Boldridge v. National City Bank*, No. 104,139, 2011 WL 3891867, at *6 (Kan. App. 2011) (unpublished opinion) (finding summary judgment inappropriate on fraud claim when intent was at issue); see also *Gonzalez*, 311 Kan. at 288 ("Intent is usually proven

17

by inference arising from circumstantial evidence because direct evidence of a defendant's state of mind is rarely available."). Thus, if J and B Oil presented any facts to support an inference of fraudulent intent, summary judgment would be inappropriate.

Contrary to Freiden's assertion, there was sufficient evidence that could be used to infer a fraudulent intent beyond the mere lack of a signed agreement. J and B Oil asserted in its response to summary judgment that Freiden agreed to sign a revised agreement but ignored Jesse's attempts to contact him after Bruce assigned the lease. It also asserted that Freiden told others that Bruce was foolish to assign the lease without a written purchase agreement. J and B Oil asserted that Freiden spoke to Jesse on the phone and threatened Bruce, suggested the insurance claim scheme, and reiterated that it was Bruce's fault for assigning the lease before getting a signed contract. These facts, taken in J and B Oil's favor, could be used to infer a fraudulent intent. Thus, whether Freiden had a fraudulent intent was a material question of fact inappropriate for decision by summary judgment.

Freiden then asserts summary judgment was appropriate because J and B Oil could not establish it reasonably relied on Freiden's promise. He argues that J and B Oil's reliance was unreasonable because "[m]ere trust of the other party in a business transaction does not, in the eyes of the law, justify a party to rely on any representations spoken or unspoken by the other party." Freiden quotes half of a sentence from *Wolf v. Brungardt*, 215 Kan. 272, 283, 524 P.2d 726 (1974), in support of his argument: "There would seem to be little doubt that while, in the ordinary business transactions of life, men are expected to exercise reasonable prudence and not rely upon others with whom they deal to care for and protect their interests." Interestingly, the second half of the sentence that Freiden omits states that "this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple minded or unwary." 215 Kan. at 283.

18

In any event, *Wolf* does not establish that Freiden is entitled to summary judgment. First, *Wolf* does not suggest that trusting a party's assertion that it would sign a contract is per se unreasonable. Second, and more importantly, whether Bruce or Jesse "reasonably" relied on Freiden's promise would be a question of fact for the jury. See, e.g., *Bouton v. Byers*, 50 Kan. App. 2d 34, 43, 321 P.3d 780 (2014) ("The reasonableness of a party's actions, including reliance on statements of another party, typically reflects a fact question reserved for the factfinder."). Thus, whether the reliance was reasonable is a material question of fact precluding summary judgment. As a result, Freiden has failed to show that he was entitled to judgment as a matter of law.

In sum, Freiden has no right to relief. First, his claim is likely unpreserved. Second, he fails to establish there were no material questions of fact and that he was entitled to judgment as a matter of law. As a result, the district court did not err in denying his motion for summary judgment.

WAS THERE SUFFICIENT EVIDENCE TO
SUPPORT THE JURY'S VERDICT ON J AND B OIL'S FRAUD CLAIMS?

Freiden argues the jury verdict on the fraud claims is not supported by clear and convincing evidence. The jury was instructed on a fraud by silence and fraudulent promise of future events claim. A claim of fraud by silence requires the plaintiff to show:

> "(1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to plaintiff. [Citation omitted.]" *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 260, 978 P.2d 922 (1999).

19

Similarly, a claim of fraudulent promise of future events requires the plaintiff to show: that when the promisor promised to do something in the future, the promisor had no intention to carry out the promise; the statement was made with the intent to deceive; and the other party reasonably relied on the promise to their detriment. See *Gerhardt v. Harris*, 261 Kan. 1007, 1013, 934 P.2d 976 (1997).

In district court, J and B Oil alleged that Freiden committed fraud by silence by failing to inform the Schulzes that he only intended to purchase the lease after a trial period. The fraudulent promise of future events claim was based on the assertion that when Bruce assigned the lease to Freiden, Freiden fraudulently promised to sign the revised purchase agreement once the agreement was ready. Both claims require an intent to deceive, which is the only element Freiden challenges in this issue. Freiden argues that the jury should not have relied on the phone conversation and, without that evidence, the only evidence of fraudulent intent was that no written agreement was ever signed. Freiden asserts that the lack of a signed agreement "is hardly clear and convincing evidence of fraudulent intent" and thus the verdict must be reversed.

J and B Oil argues that the telephone calls were sufficient to show intent but points to other evidence also supporting the verdict. J and B Oil also argues Freiden's conduct at trial and evidence on the trencher helped establish an intent to defraud.

When a party challenges a jury verdict for insufficiency of evidence or as being contrary to the evidence, it is not the function of the appellate court to weigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the appellate court should not intervene. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011). Claims of fraud must be established by clear and convincing evidence. *Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191 (2004). This court must affirm the jury's verdict if it is supported by substantial competent evidence. 277 Kan. at 403; *Blizzard*

20

*Energy v. Alexandrov*, No. 118,656, 2019 WL 1746834, at \*9 (Kan. App. 2019) (unpublished opinion) (addressing whether sufficient evidence supported jury's verdict on plaintiff's fraud claims), *rev. denied* 310 Kan. 1061 (2019).

Contrary to Freiden's assertion, there was more evidence supporting his fraudulent intent than the lack of a signed agreement. As discussed in the summary judgment issue, intent is generally proven by circumstantial evidence. *Boldridge*, 2011 WL 3891867, at \*6 (stating intent is usually proven through circumstantial evidence); see also *State v. Gibson*, 311 Kan. 732, 742, 466 P.3d 919 (2020) ("'Intent is usually proven by inference arising from circumstantial evidence because direct evidence of a defendant's state of mind is rarely available.'"). As a result, the question is whether J and B Oil presented sufficient evidence to allow the jury to infer Freiden acted with a fraudulent intent. J and B Oil did so for both claims.

The evidence presented at trial on the promise of future events claim established that Freiden promised Bruce that as soon as he received the revised contract, Freiden would drop everything and get it signed. But after Bruce assigned the lease to Freiden, neither Bruce nor Jesse could get a hold of Freiden even though they tried multiple times. Freiden claimed he did not know there was a revised agreement and he had no missed calls from the Schulzes. Thus, whether the jury believed Freiden or Bruce is a credibility determination that this court does not reweigh. See *Duckworth*, 293 Kan. at 407.

Further, speaking to intent, Lansdown testified that Freiden, upon being informed that Jesse was looking for him, stated that "he was hoping that the son of a bitch would have died by now." Freiden also instructed Lansdown to call the police if Jesse came around the lease again. Finally, the telephone conversation was properly admitted evidence that clarified Freiden's intent. Taking this evidence in the light most favorable to J and B Oil, there is sufficient evidence to infer that Freiden never intended to sign the

21

revised purchase agreement because he continued to avoid the Schulzes after the lease assignment and never paid them any money for the lease.

There was also sufficient evidence to support that Freiden committed fraud by silence by not telling Bruce or Jesse that he only intended to purchase the lease after a trial period. Landsdown testified that Freiden said that he did not want them doing a lot of work in the first six months and they had a few wells going up and down, so it looked like something was getting done. Freiden testified that he believed that he would not have to pay anything for the Beachner lease if it did not produce, and he intended to return it if it did not produce. But Freiden admitted that the contract he sent over in October 2014 said nothing about operating the Beachner lease on a trial basis. Jesse testified that in the meetings he attended with Freiden, Freiden never mentioned wanting to purchase the lease on a trial basis. Taking the evidence in the light most favorable to J and B Oil, there is clear and convincing evidence to infer that Freiden intentionally failed to communicate his desire to only operate the lease on a trial basis.

As a final matter, in his reply brief, Freiden correctly asserts that J and B Oil mischaracterized one piece of evidence it pointed to in its brief to support the verdict. In its brief, J and B Oil asserts that Freiden contacted the landowner of the Beachner lease after Bruce initially refused to sell to Freiden. But as Freiden correctly asserts in his reply brief, the testimony J and B Oil cites established that he called Bruce after he talked to the landowner about getting the lease cancelled. Thus, J and B Oil mischaracterized the sequence of events, but it does not affect the above analysis. In sum, there was substantial competent evidence to support the jury's verdict on the fraud claim.

## DID THE DISTRICT COURT ERR IN INSTRUCTING THE JURY?

Freiden next claims the district court erred in instructing the jury on the fraud claims, but more specifically he claims there was no basis for the fraud by silence

22

instruction. Freiden argues that the instruction on the fraud by silence claim was improper "as a matter of law" because J and B Oil premised the fraud by silence claim on Freiden's alleged failure to communicate that he had no intention to sign a contract. According to Freiden, this claim "involve[d] only promised actions in the future for which a fraud through silence claim does not lie."

J and B Oil argues that Freiden conflates J and B Oil's two fraud claims. It asserts that the fraud by silence claim was based on Freiden's intent to only operate the Beachner lease on a trial basis and failing to disclose that fact to Bruce or Jesse. Under this theory, J and B Oil argues the instruction was proper because Freiden himself testified that he had no intention of paying for the lease if it did not produce, but none of his communications to Bruce and Jesse conveyed that fact.

> "'For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless . . . .' [Citations omitted.]" *Burnette v. Eubanks*, 308 Kan. 838, 845, 425 P.3d 343 (2018).

The district court instructed the jury on both fraud by silence under PIK Civ. 4th 127.41 and a fraudulent promise of future events claim under PIK Civ. 4th 127.42. The fraud by silence claim was covered by Instruction No. 16 and the fraudulent promise of future events claim was covered by Instruction No. 17. The verdict form only asked the jury to answer whether "Freiden committed fraud as defined in instructions 16 or 17?"

23

On appeal, Freiden asserts, without citation to the record, that he objected to Instruction No. 16 on fraud by silence. Under Supreme Court Rule 6.02(a)(5), Freiden should have included "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." But our review of the record reveals that Freiden did object to the fraud by silence instruction, asserting that the type of claim being brought was based on future actions. J and B Oil asserted that it was presenting alternative fraud claims, one based on future events for Freiden's failure to sign the contract and one based on silence for Freiden's failure to inform Bruce or Jesse that he only intended to operate the lease on a trial basis. The district court agreed that the instructions each spoke to a separate factual situation present in the case, so it gave both instructions.

As J and B Oil points out, Freiden's challenge to the fraud by silence instruction stems from a faulty premise. Contrary to Freiden's argument, and as explained by J and B Oil and the district court in response to his objection at trial, the fraud by silence claim was submitted to the jury based on Freiden's testimony that he only intended to operate the lease on a trial basis, a material fact that he did not share with the Schulzes. The fraud by silence claim was not based on his promise to later enter into the written agreement. Based on J and B Oil's theory of recovery and the evidence presented at trial, the district court's fraud by silence instruction was legally and factually appropriate. Thus, the district court did not err in instructing the jury on the fraud claims.

### DID THE DISTRICT COURT ERR IN DENYING FREIDEN'S MOTION TO COMPEL AN ELECTION OF REMEDIES?

Freiden next claims the district court erred in denying his motion to compel an election of remedies. The doctrine of election of remedies is designed to prevent a party from taking inconsistent positions and to prevent double redress for a single wrong. *Griffith v. Stout Remodeling, Inc.*, 219 Kan. 408, 411, 548 P.2d 1238 (1976). But "the doctrine has no application where under the facts the remedies asserted by a party are

concurrent and consistent . . . . To make actions inconsistent one action must allege what the other denies, or the allegation in one must necessarily repudiate or be repugnant to the other. [Citations omitted.]" 219 Kan. at 412.

Freiden argues that the district court erred in denying his pretrial motion to compel an election of remedies between J and B Oil's contract and fraud claims about the lease. The district court denied his motion, finding it premature to require J and B Oil to elect a remedy and that the contract and fraud claims were not inconsistent. Important to this issue is the fact that before instructing the jury, J and B Oil elected to pursue only its fraud claims in regard to the lease.

Freiden spends the first four pages on this issue arguing that J and B Oil's fraud and contract claims were inconsistent and thus implicated the election of remedies doctrine. But then he concedes that a pretrial election of remedies is not required under Kansas law and that J and B Oil elected the fraud claims before submission to the jury. He then asserts that the timing of an election of remedies should be left to the discretion of the trial judge. He asserts that a pretrial election should have been required here based on factors "looked into by Colorado courts." He asserts that he suffered prejudice because the district court did not require J and B Oil to make a pretrial election of remedies.

J and B Oil argues the district court correctly allowed it to pursue its alternative claims until the close of evidence, at which time it elected which claims to submit to the jury. J and B Oil argues that the doctrine of elective remedies is inapplicable because its claims were consistent and it did not seek inconsistent remedies. It also argues that it never asked for or received a double recovery. J and B Oil argues it did not abandon its fraud claims. It also asserts that Freiden was not prejudiced by the district court's denial of the motion to compel an election of remedies.

25

Whether tort and contract claims can be brought in the same case is a question of law, which this court reviews de novo. *Diederich v. Yarnevich*, 40 Kan. App. 2d 801, 813, 196 P.3d 411 (2008).

Freiden's argument fails for five reasons. First, the election of remedies doctrine likely does not apply. Second, even assuming the doctrine did apply, J and B Oil properly, and in accordance with Kansas law, elected to pursue only its fraud claims before final submission to the jury. Third, Freiden fails to establish Kansas should require pretrial elections and fails to make a persuasive argument that one was required in this case. Fourth, Freiden's argument that J and B Oil made an irrevocable election is unpersuasive. And fifth, Freiden does not establish he suffered any prejudice.

As J and B Oil asserts, and the district court found, the fraud and contract claims were not inconsistent and thus did not implicate the election of remedies doctrine. J and B Oil's breach of contract claim about the lease was based on Freiden failing to pay the purchase price and failing to properly operate the lease during the first six months. J and B Oil's fraud claim was based on Freiden taking possession of the lease based on his fraudulent promise to sign, and go through with, the revised agreement when Bruce received it from his lawyer. In both claims, J and B Oil is trying to secure the same remedy—having Freiden pay the purchase price for the Beachner lease—under alternative legal theories. Nothing in the fraud claim denies or repudiates an element of the breach of contract claim. Instead, the same conduct satisfies the elements of both. Thus, the election of remedies doctrine does not apply.

Even assuming J and B Oil asserted inconsistent claims, by electing to proceed only on the fraud claims prior to submission to the jury, J and B Oil complied with the election of remedies doctrine. In *Griffith*, the Kansas Supreme Court explained that the election of remedies doctrine does not require a pretrial election because a party may plead alternative causes of actions and shift the theory of the case as facts develop so long

26

as the other party is informed of the "'the transaction or "aggregate of operative facts" involved in the litigation.'" 219 Kan. at 413. Similarly, other Kansas courts have found that an election must be made before final submission to the jury. See, e.g., *Scott v. Strickland*, 10 Kan. App. 2d 14, 18, 691 P.2d 45 (1984) (explaining that a party can proceed on theories of both contract and tort until facts have been developed and case is ready for submission to the jury). Thus, J and B Oil properly elected a remedy before final submission to the jury in accordance with the election of remedies doctrine.

Freiden's remaining arguments under this issue are difficult to follow. He claims that the real issue is whether the district court should have required a pretrial election based on factors considered by "Colorado courts." Freiden asserts that "Colorado courts" require the district court to consider various factors in determining whether a pretrial election is appropriate including whether a delay in requiring election would prejudice the defense by having the jury hear irrelevant evidence, whether trial preparation would be unnecessarily complicated, whether trial procedures would be awkward or unduly protracted, and whether the time and resources of the parties would be wasted.

But even assuming the district court could exercise discretion in requiring a pretrial election of remedies based on these factors, Freiden fails to establish the district court erred here. Freiden asserts "all of the factors listed . . . were present" in this case. After making this conclusory remark, he states he was "most concerned" by the fact that if the telephone conversations were admitted in connection with the fraud claims and J and B Oil later elected to pursue a contract claim then the jury would have heard irrelevant and highly prejudicial evidence. But J and B Oil did not elect to proceed on a breach of contract claim so this argument is purely hypothetical.

Freiden next asserts that J and B Oil already made an "irrevocable election to proceed on its breach of contract claim." He asserts that "J and B Oil claimed the assignment of the Beachner lease, which is itself a contract, was fraudulently induced,"

27

thus it could either sue for damages for the breach of the assignment agreement or sue for rescission to cancel the assignment. Freiden asserts that because it offered to reassign the lease back and J and B Oil refused to accept the reassignment, J and B Oil "ratif[ied] the assignment" which "operated as an election of its breach of contract theory and an abandonment of its fraudulent inducement theories." J and B Oil counters that Freiden's offer to return the Beachner lease is irrelevant to his motion to elect remedies and that it properly refused to accept the lease back because Freiden waited more than a year to make the offer and he had ruined the lease.

Freiden's argument misses the mark. First, J and B Oil's breach of contract claim was not based on the assignment. It was based on Freiden's failure to pay the purchase price of the lease. Second, J and B Oil never sought rescission of the contract. Freiden even admits that J and B Oil could either sue for damages or sue for rescission. Thus, his argument defeats itself by acknowledging that J and B Oil could sue for damages, and it chose to do so. Freiden cites no law to support his argument that J and B Oil's refusal to accept Freiden's return of the lease precluded J and B Oil from pursuing its fraud claims.

Finally, Freiden argues that although J and B Oil elected to pursue only the fraud claims before the case was submitted to the jury, he already had suffered prejudice by the time of its election and thus a pretrial election should have been required. Freiden claims that he was forced to "defend against two entirely different cases" and his "defense against one theory could be interpreted by the jury as proving the other." But Freiden does not identify how his defense against one theory could be interpreted by the jury as proving another. Freiden's defense at trial was that he was never presented with a revised agreement and that it was always the agreement that he would operate the lease on a trial basis before deciding whether to purchase it. Nothing in his defense of the breach of contract claim could be interpreted as proving the fraud claim.

In sum, the district court did not err in denying Freiden's pretrial motion to elect remedies. Even if the election of remedies doctrine applied, J and B Oil elected to pursue the fraud claims before final submission to the jury, which is all that is required under Kansas law. Freiden fails to persuasively argue that he was unduly prejudiced by the district court's failure to require a pretrial election of remedies.

## WAS THE JURY VERDICT INFLUENCED BY PASSION OR PREJUDICE AND BASED ON SPECULATION?

Freiden's final claim is that the verdict in this case "appears to have been entered by a jury influenced by passion or prejudice." He summarizes some of the evidence on the production of the Beachner lease, with no reference to where the evidence he cites appears in the record. Freiden asserts that the jury award was "presumably calculated on the basis of [an] average daily production of 15 barrels a day," but he asserts there was no evidence presented to support this production and thus the award was "based solely on speculation." He then argues that the excessive verdict likely occurred because of the inflammatory telephone conversations. Freiden concludes by arguing that the "impropriety of the verdict . . . requires a new trial."

J and B Oil first argues that this court should not consider this issue because Freiden never raised a challenge to the jury verdict before the district court. It then asserts that there is sufficient evidence to support the verdict.

As a preliminary matter, Freiden has failed to adhere to Supreme Court Rule 6.02(a)(5) on the required contents of an appellate brief. The rule states:

> "Each issue must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before this court." (2021 Kan. S. Ct. R. 36).

29

Freiden cites no standard of review or legal test for this court to apply. He also fails to include citations to the record for any of the evidence he asserts establishes the production of the Beachner lease. More importantly, he fails to assert that he raised this issue below or why this issue should be heard for the first time on appeal. "'As a general rule, matters not raised before the district court cannot be raised for the first time on appeal.'" *In re Adoption of Baby Girl G.*, 311 Kan. 798, 801, 466 P.3d 1207 (2020), *cert. denied sub nom. P. F. v. J. S.*, 141 S. Ct. 1464 (2021). The Kansas Supreme Court has warned litigants that "Rule 6.02(a)(5) means what it says and is ignored at a litigant's own peril," which includes the court finding that the issue is improperly briefed and thus waived or abandoned. 311 Kan. at 803. Because Freiden fails to assert that he raised this issue before the district court or explain why he raises it for the first time on appeal, we could decline to reach his argument. See *Ruhland v. Elliott*, 302 Kan. 405, 417, 353 P.3d 1124 (2015) (citing Rule 6.02[a][5] and declining to reach the argument). But even if we ignore these issues, Freiden's claim fails on the merits.

> "'Where a charge of excessive verdict is based on passion or prejudice of the jury but is supported solely by the size of the verdict, the trial court will not be reversed for not ordering a new trial, and no remittitur will be awarded unless the amount of the verdict in light of the evidence shocks the conscience of the appellate court. Where the alleged passion or prejudice of the jury is not shown by definite proof, but depends for support solely on the size of the verdict, the award will be upheld unless it shocks the conscience of the court. There is no simple, symmetrical pattern or design for determining whether a verdict is sufficient or insufficient, since each case must stand on its own facts.'" *Jackson v. City of Kansas City*, 263 Kan. 143, 154-55, 947 P.2d 31 (1997).

Here, the jury's verdict does not shock the conscience of the court. Freiden proposed to pay $50,000 per barrel based on the average produced over six months. At trial, there were various statements about the production capacity of the Beachner lease. Jesse testified that with only five wells running, the seven-day production average was

16.08 barrels per day. Similarly, Bruce asked the jury to award $900,000 based on the five of the 33 wells producing 18 barrels a day. Bruce even testified that the five wells they did produce were not "even the good wells." Bruce estimated that with all the wells going and using the injection system, which he never used before Freiden took over, the Beachner lease should produce 30 barrels per day.

Freiden and his witnesses presented a different version of the production. Jesseph testified that there was an average production of about 2.04 barrels per day in 2016, 2.32 barrels per day in 2017, and 1.38 barrels per day in 2018. Freiden testified that he was getting at least four or five barrels a day. But Lansdown testified that Freiden told him that he did not want Lansdown doing a lot of work in the first six months because the price of the agreement was based on production in the first six months. And Jesse testified that he did not believe Freiden had turned the injection system on.

As we stated earlier in this opinion, when a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Duckworth*, 293 Kan. at 407.

Given all the evidence presented at trial, it cannot be said that the jury's award of $750,000—which presumably represented a 15 barrel per day average at the $50,000 agreed price—is shocking. While it may be higher than Freiden and his witnesses testified about the production, it was below what Bruce and Jesse testified the Beachner lease produced with only five of the 33 wells operating without the injection system. The verdict was within the realm of the evidence, and it cannot be said that the damages the jury awarded were speculative. As a result, Freiden's challenge to the verdict fails.

Affirmed.

31